HORNER *v.* UNITED STATES. No. 2.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 1473. Argued January 13, 14, 1892. — Decided March 7, 1892.

On a complaint before a United States commissioner in New York, against H. for a criminal offence, in violation of § 3894 of the Revised Statutes, as amended by the act of September 19, 1890, c. 908, (26 Stat. 465,) prohibiting the sending by mail of circulars concerning lotteries, H. was committed to await the action of the grand jury. A writ of *habeas corpus* issued by the Circuit Court of the United States was dismissed by that court. H. appealed to this court in November, 1891. *Held,*

(1) As the constitutionality of § 3894, as amended, was drawn in question, an appeal lay directly to this court from the Circuit Court, under § 5 of the act of March 3, 1891, c. 517, (26 Stat. 826 to 828, 1115;)

Opinion of the Court.

(2) Under such an appeal, this court acquires jurisdiction of the entire case, and of all questions involved in it, and not merely of the question of constitutionality;

(3) This court ought not to review the question whether the transaction complained of was an offence against the statute, because the commissioner had jurisdiction of the subject matter involved, and of the person of H.;

(4) The statute is constitutional;

(5) A statute is a law equally with a treaty, and, if subsequent to and conflicting with the treaty, supersedes the latter.

THE case is stated in the opinion.

*Mr. Alfred Taylor* and *Mr. Herman Aaron* for appellant.

*Mr. Solicitor General* for appellee.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

On the 10th of August, 1891, a post-office inspector of the United States made complaint on oath before John A. Shields, a United States commissioner for the Southern District of New York, that, on the 29th of December, 1890, Edward H. Horner, of New York City, unlawfully deposited, and caused to be deposited in the post-office at that city, in the State of New York, and in the Southern District of New York, a certain circular, to be conveyed and delivered by mail, which, in the contents thereof, thereafter set forth in the complaint, concerned a lottery, and which was then and there addressed to Joseph Ehrman, 70 Dearborn Street, Chicago, Illinois, and was enclosed in an envelope, with postage thereon prepaid, and carried by mail, and that the circular contained, among other things, what is set forth in the margin,[1] the further contents of the complaint being also set forth therewith.

---

[1] " ' 538.
" ' Banking-house of E. H. Horner, No. 88 Wall street.
" ' NEW YORK, *December* 27, 1890.
" ' Austrian State Bonds of 1864.
" ' 110th redemption, December 1st, 1890, at Wien. The following 26 series were called in:

Opinion of the Court.

On the same day the commissioner issued a warrant to the marshal, commanding him to arrest Horner and bring him before the commissioner. This was done, and Horner demanded an examination on the charge, which was had and completed; and the commissioner then certified that it appeared to him, from the testimony offered, that there was probable cause to believe Horner guilty of the offence charged in the warrant, and he committed Horner to the custody of the marshal, in default of $5000 bail, to await the action of the grand jury. By consent, Horner was then discharged, on his own recognizance, until a day named, for the purpose of giving bail, and was subsequently discharged on bail, to await trial.

| "Serie. | No. | Fl. S. W. | Serie. | No. | Fl. S. W. | Serie. | No. | Fl. S. W. |
|---|---|---|---|---|---|---|---|---|
| "121 | 36 | 20000 | 1369 | 24 | 24   400 | 2666 | 63 | 400 |
| "271 | 75 | 400 | | 46 | 400 | | 84 | 400 |
| "280. | 22 | 1000 | 1792 | 19 | 400 | 2988 | 2 | 400 |
| " | 65 | 400 | 1970 | 16 | 2   000 | | 10 | 400 |
| "461 | 37 | 400 | | 69 | 400 | | 48 | 50000 |
| "481 | 54 | 400 | | 70 | 5,000 | | 88 | 400 |
| | 72 | 10000 | 2388 | 28 | 400 | 3195 | 44 | 5000 |
| "487 | 69 | 400 | 2412 | 53 | 400 | | 50 | 400 |
| "493 | 6 | 400 | | 74 | 400 | 3238 | 14 | 400 |
| "684 | 14 | 400 | | 82 | 400 | | 52 | 400 |
| | 56 | 400 | 2483 | 36 | 400 | 3486 | 35 | 400 |
| | 94 | 400 | 2526 | 72 | 400 | 3685 | 39 | 400 |
| "815 | 70 | 400 | | 82 | 400 | | 81 | 400 |
| | 82 | 400 | 2531 | 44 | 400 | 3969 | 4 | 400 |
| "853 | 23 | 400 | | 91 | 1000 | | 14 | 400 |
| | 61 | 400 | 2666 | 3 | 400 | | 50 | 400 |
| | 81 | 400 | | 18 | 2000 | | | |

"'All other bonds contained in the above twenty-six series not especially mentioned therein are redeemed with fl. 200. Payment on and after March 1, 1891. The next report of redemption will be published in the second half of the month of January, 1891. Customers who have been notified by special letter of the redemption of their bonds can cash the respective amounts at my office.'

"That the said words and figures of the said circular relate to and concern, and were understood by Joseph Ehrman to relate to and concern, certain so-called bonds issued by the Empire of Austria, and to state on which of said so-called bonds payments were to be made and the amount thereof.

On the 17th of November, 1891, Horner was surrendered by his surety, and was committed by the commissioner, in

---

" The following is a translation of the face of one of such so-called bonds:

"' Series 921.                    100 florins.                    Number 60.
.'' ' Premium Bonds.

"' One hundred florins, Austrian standard, as share of the loan of forty million florins, Austrian standard, made according to the law of November. 17th, 1863, (Law Journal of the Empire, No. 98,) for which the amount resulting, according to the plan of redemption, will be paid to the bearer by the universal state loan treasury.

"' Vienna, February 11th, 1864.

"' (Signed)        JOSEPH RUDDE,
"' (Coat of arms.)          *Imperial-Royal Minister Counsellor.*
"' (Signed)        PLENER,
"' *Imperial-Royal Minister of Justice.*

"' For the board for controlling the state loans:
"' (Signed)        COLLERDO MANNSFELDT.
"' (Signed)        WINTERSTEIN.

"' For the imperial-royal universal state loan treasury:
"' (Signed)        WINTER.
"' (Signed)        SCHIMKOWSKY.'

" Each of the so-called bonds has upon its face a series number and a number in the series. The amount of indebtedness which said so-called bond purports to evidence is one hundred (100) florins. The plan of drawing set forth on the back of said so-called bond shows that up to April, 1874, there were to take place five drawings a year, on dates therein stated, which should determine upon which of the so-called bonds payments should be made and the amounts of such payments. That thereafter and until the end of the nineteenth (19th) year after the date of the issue of the so-called bonds, four drawings per year were to take place at stated dates for the same purpose; and that thereafter, to and including the thirty-first (31st) year, three (3) drawings were to take place at fixed dates for each year for the same purpose; and that thereafter, to and including the fifty-fifth (55th) year after the date of issue of such so-called bonds, two (2) drawings per year were to take place for the same purpose; at the end of which time all of said so-called bonds were, according to the plan aforesaid, to be paid; that according to said plan the smallest amount to be paid for any of such so-called bonds selected for payment during the first year after issue was one hundred and thirty-five (135) gulden, during the second year one hundred and forty (140) gulden, and during the third year one hundred and forty-five (145) gulden, and so on, increasing in amount five (5) gulden each year until the amount should reach two hundred (200) gulden, which amount then remained fixed as the minimum sum to be paid for any of the so-called

default of $5000 bail, to the custody of the marshal on the warrant, to await the action of the grand jury.   On the same

---

bonds whose payment should be determined by the drawings aforesaid; that gulden and florins are denominations of money of the same value; that under the said plan other larger amounts are provided to be paid on certain of the so-called bonds, to be determined by the drawing. Thus, during the first year the following sums are, according to said plan, to be paid on certain so-called bonds, to be determined by such drawing, to wit:

"On one bond...................................................... 250,000 gulden
"  "   "     "     ................................................... 25,000   "
"  "   "     "     ................................................... 15,000   "
"  "   "     "     ................................................... 10,000   "
"On 2 bonds, each at 5,000 gulden......................... 10,000   "
"On 3 bonds, each at 2,000 gulden......................... 6,000   "
"On 6 bonds, each at 1,000 gulden......................... 6,000   "
"On 15 bonds, each at 500 gulden.......................... 7,500   "
"On 30 bonds, each at 400 gulden.......................... 12,000   "

"And during subsequent periods other provision is made for such larger amounts. That all of the said so-called bonds are in the same form as said copy translation, and have the same drawing and redemption plan endorsed upon them, and are identical in all respects, except that the series numbers and the number thereof vary as to each so-called bond; that deponent produces herewith the original of the so-called bond herein referred to; that all the drawings heretofore referred to by which, first, are determined the series of the so-called bonds to be paid or redeemed in each year, and, second, are determined the particular bonds in the series whose holders shall be entitled to the larger sums aforesaid, the numbers of which are drawn from the wheel, are conducted in such a way as that the determination of the numbers both for redemption and for amounts is wholly by lot or chance. The holder of each so-called bond has an equal chance with the holder of every other so-called bond, first, in securing an early payment of his so-called bond, and, second, in securing, as a so-called payment for his so-called bond, the very large prizes to which reference has already been made, the result in each case, as before alleged, being dependent wholly on lot or chance.

"Wherefore deponent says that the scheme for the so-called redemption of the so-called bonds above referred to is a lottery, and that the depositing of the said circular and the causing thereof to be deposited as above alleged was against the peace and dignity of the United States of America, and contrary to and in violation of section three thousand eight hundred and ninety-four (3894) of the Revised Statutes of the United States, as amended by the act of September nineteenth (19th), one thousand eight hundred and ninety (1890)."

day, on the petition of Horner, presented to the Circuit Court of the United States for the Southern District of New York, an order was made by that court that writs of *habeas corpus* and *certiorari* issue to the marshal and the commissioner, returnable on that day. Returns were made to the writs, and on the same day, after counsel were heard, the court, held by Judge Wheeler, made an order dismissing the writ of *habeas corpus* and remanding Horner to the custody of the marshal. Horner thereupon took an appeal to this court, on November 17, 1891, and was discharged on bail to abide the further action of the Circuit Court on the mandate of this court.

The complaint in this case is founded on § 3894 of the Revised Statutes of the United States, as amended by the act of September 19, 1890, c. 908, (26 Stat. 465,) which reads as follows: " No letter, postal card or circular concerning any lottery, so-called gift concert or other similar enterprise offering prizes dependent upon lot or chance, or concerning schemes devised for the purpose of obtaining money or property under false pretences, and no list of the drawings at any lottery or similar scheme, and no lottery ticket or part thereof, and no check, draft, bill, money, postal note or money order for the purchase of any ticket, tickets, or part thereof, or of any share or any chance in any such lottery or gift enterprise, shall be carried in the mail or delivered at or through any post-office or branch thereof, or by any letter carrier; nor shall any newspaper, circular, pamphlet or publication of any kind containing any advertisement of any lottery or gift enterprise of any kind offering prizes dependent upon lot or chance, or containing any list of prizes awarded at the drawings of any such lottery or gift enterprise, whether said list is of any part or of all of the drawing, be carried in the mail or delivered by any postmaster or letter carrier. Any person who shall knowingly deposit or cause to be deposited, or who shall knowingly send or cause to be sent, anything to be conveyed or delivered by mail in violation of this section, or who shall knowingly cause to be delivered by mail anything herein forbidden to be carried by mail, shall be deemed guilty of a misdemeanor, and on conviction shall be punished by a fine of not more than five

hundred dollars or by imprisonment for not more than one year, or by both such fine and imprisonment for each offence. Any person violating any of the provisions of this section may be proceeded against by information or indictment and tried and. punished, either in the district at which the unlawful publication was mailed or to which it is carried by mail for delivery according to the direction thereon, or at which it is caused to be delivered by mail to the person to whom it is addressed."

There are 9 assignments of error in this case, 6 of which allege that the facts proved before the commissioner do not constitute a crime within § 3894, as amended; 2 of them are based on the claim that that section is unconstitutional; and the remaining one contends that that section is in violation of a treaty between the United States and Austria, and is therefore void.

It is contended on the part of the United States that, as the appeal in this case was taken on November 17, 1891, after the act entitled " An act to establish circuit courts of appeals, and to define and regulate in certain cases the jurisdiction of the courts of. the United States, and for other purposes," c. 517, passed March 3, 1891, (26 Stat. 826,) went into effect, this court has no jurisdiction of this appeal, and that it ought to have been taken to the Circuit Court of Appeals for the Second Circuit. But, as the constitutionality of § 3894, as amended, is drawn in question, an appeal in this case lies directly to this court from the Circuit Court, under § 5 of the act of March 3, 1891, which gives such appeal " in any case in which the constitutionality of any law of the United States . . . is drawn in question." This is in accordance with our decision in *Nishimura Ekiu* v. *United States*, 142 U. S. 651, 658, 659, where it was said: " As this case involves the constitutionality of a law of the United States, it is within the appellate jurisdiction of this court, notwithstanding the appeal was taken since the act establishing Circuit Courts of Appeals took effect. Act of March 3, 1891, c. 517, § 5; 26 Stat. 827, 828, 1115."

We are further of opinion that where an appeal or writ of error is taken direct to this court under § 5 of the act of March 3, 1891, in a case in which the constitutionality of a law of the

United States is drawn in question, this court acquires jurisdiction of the entire case, and of all questions involved in it, and not merely of the question of the constitutionality of the law of the United States. This is shown by the fact that, under sec. 5, where an appeal or writ of error is taken direct to this court, in a case in which the jurisdiction of the District Court or of the Circuit Court is in issue, it is specifically directed that "the question of jurisdiction alone shall be certified to the Supreme Court from the court below for decision," but there is no kindred limitation prescribed in regard to any of the other cases in which jurisdiction in this court of appeals or writs of error is given by § 5.

It is contended for Horner that the circular set forth in the complaint, relating to the redemption of the Austrian government bonds, is not included in the prohibition of § 3894 of the Revised Statutes, as amended, and that he committed no offence by depositing such circular in the mail. But we are of opinion that that question ought not to be reviewed by us on this appeal. The point raised is that the Austrian bond scheme was not a lottery. That is a question properly triable by the court in which an indictment may be found against Horner. He is now held to await the action of a grand jury. His case is in the regular course of criminal adjudication. It is not proper for this court, on this appeal, nor was it proper for the Circuit Court, on the writ of *habeas corpus,* to determine the question as to whether the scheme was a lottery. *In re Cortes,* 136 U. S. 330; *Stevens* v. *Fuller,* 136 U. S. 468. The commissioner had jurisdiction of the subject matter involved and of the person of Horner, and the grand jury would have like jurisdiction. The offence, if any, was committed within the Southern District of New York. Whether the scheme was a lottery is a question to be determined in the administration of the jurisdiction. It is not for this court to determine that question in advance. The principle is the same as that involved in *In re Fassett,* 142 U. S. 479, 483, 484. The case presents for the determination of the court in which the indictment may be found the question as to whether the scheme was a lottery, and it is not for any court to determine it in

advance, on *habeas corpus*. If an inferior court or magistrate of the United States has jurisdiction, a Superior Court of the United States will not interfere by *habeas corpus.* *Ex parte Mason*, 105 U. S. 696; *Ex parte Carll*, 106 U. S. 521; *Ex parte Wilson*, 114 U. S. 417; *Wales* v. *Whitney*, 114 U. S. 564; *Ex parte Harding*, 120 U. S. 782; *Benson* v. *McMahon*, 127 U. S. 457; *In re Coy*, 127 U. S. 731, 758; *In re Cortes*, 136 U. S. 330; *Stevens* v. *Fuller*, 136 U. S. 468, 477, 478 and cases there cited.

The question of the constitutionality of § 3894, as amended, is disposed of by the decision of this court in *Ex parte Rapier, ante*, 110, which holds that it is constitutional.

The proposition that that section is void if it contravenes a treaty between the United States and Austria is not tenable. The statute is a law equally with the treaty, and, if subsequent and conflicting with the treaty, supersedes the latter. *Head-Money Cases*, 112 U. S. 580; *Whitney* v. *Robertson*, 124 U. S. 190; *Chinese Exclusion Case*, 130 U. S. 581.

The order of the Circuit Court, dismissing the writ of *habeas corpus* and remanding the accused, is

*Affirmed.*