CITY OF DAWSON et al. v. COLUMBIA AVE. SAVING-FUND, SAFE-DEPOSIT, TITLE & TRUST CO.

(Circuit Court of Appeals, Fifth Circuit. May 1, 1900.)

No. 879.

APPEAL—INTERLOCUTORY ORDERS GRANTING OR REFUSING INJUNCTIONS.

Under the amendatory act of February 18, 1895, which limits the jurisdiction of circuit courts of appeals as to interlocutory orders granting or refusing preliminary injunctions to cases in which an appeal from a final decree may be taken to those courts, an appeal will not lie to such a court from an order granting an injunction in a case involving the construction and application of the constitution of the United States, and in which ordinances of a municipality are claimed to be in contravention of the constitution, by impairing the obligation of a contract, although the case may also involve other questions.

McCormick, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Northern District of Georgia.

The bill in this case was filed by the appellee, a corporation organized under the laws of Pennsylvania, as trustee for the holders of 80 first mortgage bonds, of $500 each, issued by the Dawson Waterworks Company, a Georgia corporation, against the city of Dawson, Ga., and the said Dawson Waterworks Company. The mayor, aldermen, and marshal, all citizens of Georgia, are formally made defendants. It is shown by the record that the city council of the city of Dawson on the 21st day of February, 1890, passed an ordinance

by which it granted to R. L. Bennett, of Philadelphia, Pa.. and his associates, their successors and assigns, who were required to organize a company to be styled the Dawson Waterworks Company, the exclusive right and privilege, for the period of 99 years, of constructing, maintaining, and operating a system of waterworks. In compliance with the requirement of the ordinance, Bennett organized, under the laws of Georgia, a corporation known and designated as the Dawson Waterworks Company. The ordinance of February 21, 1890, or so much thereof as it is deemed necessary here to insert, provided as follows:

### "Waterworks Contract.

"Sec. 231. The city council of the city of Dawson, Georgia, do hereby grant to R. L. Bennett, of Philadelphia. Pennsylvania, and his associates, their successors and assigns, who are to organize a company to be styled 'The Dawson Waterworks Company,' the exclusive right and privilege for a period of ninety-nine years, of constructing, maintaining and operating a system of waterworks for the purpose of supplying said city and its inhabitants with water for protection against fire, and domestic, sanitary, and other purposes.

"Sec. 232. The said company, for the purpose of constructing, maintaining, operating, extending, and repairing said system of waterworks, shall have the sole and exclusive privilege, and full power, right and authority to lay water pipes and mains along any or all streets and avenues of said city, as the same are now open, or may hereafter be extended, and to that end shall have full right to dig ditches or trenches in the streets of said city of such depth and of such width as may be necessary: provided, that the city shall not be responsible for any damage occasioned thereby, and that the streets shall not be unreasonably obstructed by such work.

"Sec. 233. The said company shall have the right to erect buildings and tanks, lay pipes and erect any other structures, or make any other improvements which may be necessary for its purpose on any or all lands owned or controlled by said city except its public squares.

"Sec. 234. The said company and their successors and assigns shall complete and have in operation within eighteen months from the date of the passage of this ordinance, a complete and thorough system of waterworks, laying four and eight-tenths (4 and 8/10) miles of pipe, size eight, six and four inches in diameter, with a reservoir of not less than forty thousand gallons capacity, and of sufficient height to produce a pressure on the mains such that from any hydrant located on principal streets a stream of water will be projected fifty feet vertically, in still air, through one hundred feet of fire hose with a one-inch nozzle attached. The said company, and their successors and assigns, shall be, and are required, from the completion of their system of waterworks till their charter shall cease, to furnish a sufficient supply of water for the purposes before and hereafter mentioned, unless prevented by unavoidable and providential causes. In such event they shall be allowed a reasonable time to make repairs, and if. after such reasonable time has been allowed, they should still fail to furnish said supply of water, their franchise from that fact be forfeited.

"Sec. 235. The said company shall extend its mains and pipes, enlarge its plant, and generally enlarge its system from time to time to meet increasing demands consequent upon the growth of the city.

"Sec. 236. The city of Dawson, in consideration of said company guarantying to it. for the period of twenty years, and as long thereafter as the said company, its successors and assigns, shall continue to operate waterworks, a free and unrestricted use of its water, in case of fire and for protection against conflagration. and agreeing to establish at convenient places along the line of its mains, fire plugs of approved pattern, not to exceed fifty in all, until the corporate limits of said city are extended and the population of said city increased so that there are five hundred persons living in said extension, after which they shall be increased proportionately if required, and, as an additional fire protection. also furnish water to fill the present public cisterns if needed, the said water to be used exclusively for fire purposes only, and the said water to remain the property of the said company except in case of fire, hereby obligates itself to pay to the said company or to such trust company as the Dawson Waterworks may elect or decide upon as their trustee for

their bonds, the sum of two thousand dollars annually for twenty years, in semiannual payments of one thousand dollars each, on the first day of January and July of each year. The first payment to be made on such of said days as occur after the completion of said works as provided in section 234 of this ordinance; and, in case said city 'shall not have sufficient funds at any of such times to make said payments, or for any cause does not pay said money at time fixed as aforesaid, then in that case warrants shall be issued on the city treasurer, in favor of said company, for the amount due.

"Sec. 237. The council shall, and they are hereby required to, make provision each year for the payment of two thousand dollars as provided in the foregoing section, by levying a tax, sufficient for that purpose, on the taxable property of the city.

"Sec. 238. Said company, its successors and assigns, shall have the right to make reasonable rates and regulations for the government of private consumers in the use of its water; and to charge such rates for its use, as it may from time to time establish: provided, the rate charged per annum shall not exceed those named in the following schedule.   *   *   *

"Sec. 239. That in consideration of the said company agreeing to furnish water to the public municipal buildings, and further agreeing to furnish water to two public fountains of ⅛-inch nozzle each, the city of Dawson hereby obligates itself to remit to said company, its successors and assigns, any and all license fees, taxes, dues and charges which may at any time hereafter be levied or assessed by said city against said company or upon the plant to be used in said waterworks system.

"Sec. 240. That full assent is hereby given to a charter to be granted by the legislature of the state of Georgia, to said R. L. Bennett and associates, their successors and assigns, or to be obtained by them under the general incorporation laws of said state, incorporating them into a body corporate under the title of the Dawson Waterworks Co., and granting to said company the exclusive right to construct, maintain and operate a system of waterworks in said city of Dawson, for the purpose of supplying said city, its inhabitants, citizens, residents, with water for protection against fire and for domestic, sanitary and other useful purposes, and to make such reasonable rates and regulations for the government of private consumers in the price of water, and to charge such rates therefor as the said company may determine upon: provided, the rates do not exceed those established by this ordinance.

"Sec. 241. The provisions of this ordinance shall be mutually binding upon the city of Dawson and R. L. Bennett and associates, and the company to be organized by them in pursuance of the provisions thereof, and it shall have the force and effect of a contract between the respective parties as fully and completely as if it were drawn in that form and signed by the contracting parties."

For the purpose of obtaining money to construct the waterworks, the waterworks company thereafter issued 80 first mortgage bonds, of $500 each, aggregating $40,000, and. to secure their payment, executed to the appellee, as trustee for the holders of the bonds, a mortgage on all its property, franchises, and privileges, and authorized the trustee to collect all amounts to become due by the city of Dawson 'for water rentals. The city of Dawson, by a resolution of its council duly passed, recognized the right of the appellee, as trustee, "to demand, receive, and collect from the city of Dawson any and all sums of money that may be now due or that may hereafter become due under the aforesaid contract." It also appears that, pursuant to its contract with the city, the waterworks company constructed a system of waterworks, and has up to the present time supplied the city and the inhabitants with water. For the water thus supplied the city has paid the waterworks company the amount due under the contract, to wit, $2,000 per annum, up to the 1st day of January, 1895, when it refused to make further payments upon the ground that the contract was void, and upon the further ground that the waterworks company had failed to supply the quantity of water required of it by the terms of its contract. The city based its claim of the invalidity of the contract upon the decision of the supreme court of Georgia rendered in the case of City of Dawson v. Dawson Waterworks Co., 106 Ga. 696, 32 S. E. 907. Although the city paid, as before stated, the water rentals due

to the 1st day of January, 1895, yet in June, 1894, an ordinance was passed repudiating and renouncing the contract, as illegal and exorbitant. It is further shown that in October, 1894, the city council passed an ordinance ordering an election for the purpose of determining whether two-thirds of the qualified voters should by their assent authorize the city to issue $35,000 of 6 per cent. bonds for the purpose of buying or erecting a system of waterworks and an electric light plant. The election was held, and resulted in a vote favorable to the proposition; and in December following another ordinance was passed, declaring the result of the election. The appellants admit in their answer the passage of the various ordinances mentioned, and in reference to the one of June, 1894, it is averred that "the city formally, solemnly, and in good faith repudiated and renounced said contract because the same was illegal and exorbitant." And in the amended answer it is further averred: "Respondents do not deny that, as adjudged by the supreme court of Georgia they had a right to do, they have declined to carry out the alleged contract between a former city council of Dawson and the Dawson Waterworks Company." As to the election ordered for the purpose of determining whether the city should issue bonds to establish a waterworks system of its own, the answer avers as follows: "They also admit that they have held an election for the purpose of authorizing an issuance of bonds, in order with the proceeds thereof, when sold, to buy or erect a new system of waterworks; but said bonds have never been issued, and no attempt has been made to sell the same, and nothing else has been done towards erecting said new system of waterworks."

The appellee claims in the amended bill that the ordinances passed by the city council subsequent to the date of the contract between the city and the waterworks company impaired the obligation of the contract, and attempted to deprive the bondholders and the waterworks company of their property without due process of law, and hence were repugnant to the constitution of the United States. Upon this point is is alleged in the amended bill: "(23) Your orator shows that notwithstanding the validity of the aforesaid contract contained in the aforesaid ordinance of February 21, 1890, and notwithstanding the fact that the bonds were marketed on the faith of said contract, and the waterworks were erected at great expense, and the waterworks company complied with the terms and conditions of the contract, the said city of Dawson has by its ordinances and conduct attempted to impair the obligation of said contract, and has thereby greatly diminished and largely destroyed the value of the property of said waterworks company, which constitutes the security possessed by the bondholders, and has deprived bondholders of the rentals which were to be paid by the said city under said contract; and said action and threatened action of said city are in fraud and destruction of the rights of bondholders, and your orator as their trustee, under said contract with the city, and the protection guarantied under the constitution of the United States. The aforesaid ordinance passed by said city council of Dawson on June 27, 1894, whereby said city undertook to repudiate said contract, was an attempt on the part of the said city of Dawson to impair the obligation of said contract, in violation of the constitution of the United States, and the protection thereby guarantied to private rights. The said city has also passed other ordinances and done acts in attempted impairment of said contract, namely, the ordinance passed by said city of Dawson on October 4, 1894, ordering an election for the purpose of determining whether two-thirds of the qualified voters of said city should, by their assent, authorize said city to issue $35,000 of 6% bonds for the purpose of buying or erecting a system of waterworks and electric light plant for said city, and the ordinance passed by said city of Dawson on November 5, 1894, on the same subject, and to the like effect, and the holding of the election on December 12, 1894, pursuant to the provisions of said two last-mentioned ordinances, and the carrying of said proposition by the requisite two-thirds of the qualified voters of said city, and the ordinance passed by said city of Dawson on the 13th day of December, 1894, whereby the result of said election was declared to be in favor of the issue and sale of bonds for said purposes, as well as the subsequent conduct of the said city in giving effect to said ordinances by refusing to pay the water rentals stipu-

lated in said contract, or to levy a tax for the purpose as required by the contract, and by claiming that it was no longer bound by said contract. All of said ordinances and acts are an effort and attempt on the part of said city of Dawson to·impair the obligations of said contract, under color of a claim of authority from the constitution and laws of the state of Georgia, in violation and attempted impairment of the protection guarantied to said contract under the constitution of the United States. The city of Dawson, in further attempted violation of. the obligation of said contract, contrary to the provision of the constitution of the United States that no state shall pass any law impairing the obligation of contracts, under color of the authority given it by its charter to make and adopt all ordinances, by-laws, and rules and regulations necessary or proper for the security, welfare, convenience, and interests of said city and its inhabitants, and for preserving the health, morals, peace, order, and good government of the same, not only adopted the aforesaid ordinances, but recently, and at the time when temporarily restrained by this honorable court, was proceeding to carry into effect said ordinances and the said election, as hereinbefore set forth.ᵗ All of which wrongs and threatened wrongs are contrary to equity and good conscience, and are irreparable, and can only be relieved against and prevented by the gracious interposition of a court of equity. Your orator shows that the present suit arises under the constitution and laws of the United States, and your orator invokes the jurisdiction of the circuit court of the United States, in order to set up and enforce the protection guarantied by the constitution of the United States to contract rights, and to defeat and prevent the effort of said city to impair the obligation of the aforesaid contract."

All the defendants except the waterworks company appeared and demurred to the bill for the want of jurisdiction and for other causes. They next filed an objection in the nature of a plea to the jurisdiction of the court, as follows: "That the alleged defendant, the Dawson Waterworks Company, which is a corporation created and organized under the law of Georgia, and resident therein now and at the time of the filing of said bill, namely, in said city of Dawson and county of Terrell, was and is the real complainant, and that the action of the said defendant and of the alleged complainant, set forth and exhibited to said bill, was and is fraudulent and collusive, and was had during the month of April last, and since the judgment of the supreme court of Georgia in the case of the city of Dawson against the said the Dawson Waterworks Company was rendered on said alleged contract, declaring the same void, which judgment, together with the record in said case, is hereafter more fully and specifically pleaded in order to obtain jurisdiction in this honorable court in a new name, and under an alleged new-created right of action, which does not exist, except to the extent created as above stated, and for the purpose of avoiding the said judgment of the supreme court, which is final and conclusive of all the questions decided in that case, and all questions now made by said bill in this case." And, for further cause why injunction should not issue, the defendants objected: "(1) That there is no equity in said bill. (2) That there is no right of action in complainant for the purposes of said bill, even if its allegations are all true, because, according to said allegations, the only right of action existing on behalf of complainant is a suit at law to recover the alleged rentals. (3) That the allegations contained in said bill do not show any valid contract between the said waterworks company and the city of Dawson, or the city council ·of Dawson, under the constitution and laws of Georgia, but, on the contrary, that said alleged contract was and is void, and that there is no contract at all between complainant and the defendant. For further cause these defendants show that, under the constitution and laws of the ,state of Georgia, the alleged contract between said waterworks company and the said city was absolutely void ab initio, because the said city had no power to make said contract, and ·because the making of such a contract by such a corporation as the city of Dawson, or city council of Dawson, was and is expressly prohibited by the constitution of the said state of Georgia, and because, under said constitution and the charter of the city of Dawson, neither the said city nor the city council had or has any legal power to pay the

rentals claimed, or to levy any tax for such purpose. For further cause why said injunction should not issue, these defendants say that heretofore, to wit, on the 14th day of March, 1899, the supreme court of Georgia, in the cause of the Dawson Waterworks Company against the city council of Dawson, in a suit brought by said plaintiff against said defendant in the superior court of Terrell county, Georgia, for alleged rentals under said alleged contract for the year 1895, and which cause was carried to said supreme court by writ of error on the part of said city, decided and adjudged that under the constitution and laws of the state of Georgia, and its settled policy, said alleged contract was, ab initio, void, and that complete performance of such a contract by said plaintiff did not prevent the municipal corporation from pleading want of power or the illegality of the contract, and also decided and adjudged in said case adversely to the plaintiff therein, namely, the said waterworks company, all the questions and contentions now made by complainant in said bill; and these defendants hereto attach a complete record of said cause in said supreme court, including the said judgment of the court, as Exhibit A, praying leave of reference thereto. Wherefore these defendants say that all the questions now made by complainant in said bill are res adjudicata,—the said contract being adjudged void,—and that these defendants were not estopped from so pleading by the said former judgment, as will more fully appear from the said record and judgment." Then followed an answer setting forth the various defenses upon which the defendants relied.

The motion for a preliminary injunction came on to be heard before Judge PARDEE upon the pleadings and proofs, and, as a result of the hearing, an injunction was issued, in the following form: "These, therefore, are to command and strictly enjoin you, under penalty of ten thousand dollars, that you do from henceforth altogether and absolutely desist from erecting, constructing, or installing any system of waterworks in or for the city of Dawson, or other water supply, for fire protection, or furnishing the citizens or inhabitants of said city, for domestic, sanitary, or other purposes; or from entering into any contract or arrangement with any person, firm, or corporation for the construction, lease, operation, or use of any system of waterworks, or for the supply for fire protection or for other municipal purposes, or for laying mains or other waterworks, or permitting the laying of pipes or mains or the construction of waterworks in violation of the contract set out in complainant's bill, or the exclusive rights thereby given; or from selling or otherwise disposing of bonds, and, in particular, from selling or offering for sale, or disposing of, any of the bonds of the city of Dawson mentioned in complainant's bill; or from paying out any moneys for waterworks; or from incurring any obligations for waterworks; or from entering upon or carrying out any contract for waterworks, save and except contract referred to in complainant's bill, or forbidding or preventing any person, organization, fire company, or agency from carrying out the aforesaid contract with the Dawson Waterworks Company; or from placing any obstacle in the way of the due carrying out and performance and fulfillment thereof according to its terms; or from ordering, directing, ordaining, or by corporate act or ordinance, or otherwise, causing, advising, counseling, or procuring the fire department fire companies, or other fire organization or individuals acting as the fire department or company, or using the city's fire apparatus, to desist or refrain from the use of water furnished by the Dawson Waterworks Company; or from levying or enforcing the collection of any city tax or license fee against the waterworks of the Dawson Waterworks Company, stipulated to be paid in water, or by furnishing the water as set forth in the contract, in violation of said contract with said waterworks company; or with doing any other act in violation of the covenant, stipulation, terms, and conditions of said contract, until the further order of said court." From the interlocutory order awarding an injunction, the city of Dawson, the mayor and board of aldermen (composing the city council), and the marshal have appealed to this court.

Du Pont Guerry and Henry C. Peeples, for appellants.
John I. Hall and Olin J. Wimberley, for appellee.

Before McCORMICK, Circuit Judge, and MAXEY and PAR-
LANGE, District Judges.

MAXEY, District Judge, after stating the case, delivered the fol-
lowing opinion:

If the case is properly here on appeal, the merits of the contro-
versy should be considered and determined. If, however, it is not
properly in this court, the appeal should be dismissed. The appellate
jurisdiction of this court in reference to interlocutory orders made
by the circuit courts, refusing or granting injunctions, is limited by
the amendatory act of February 18, 1895, to those cases "in which an
appeal from a final decree may be taken under the provisions of this
act to the circuit court of appeals." Under the fifth section of the
act of March 3, 1891, by virtue of which the circuit courts of appeals
were established, and their jurisdiction defined (26 Stat. 826), appeals
may be taken from the circuit courts directly to the supreme court in
the following cases:

"In any case in which the jurisdiction of the court is in issue; in such cases
the question of jurisdiction alone shall be certified to the supreme court from
the court below for decision. * * * In any case that involves the con-
struction or application of the constitution of the United States. * * *
In any case in which the constitution or law of a state is claimed to be in
contravention of the constitution of the United States."

By the sixth section of the act the appellate jurisdiction of the
circuit courts of appeals is confined to cases other than those provided
for in the fifth section. If, then, cases which involve the construction
or application of the constitution of the United States, and cases in
which the constitution or law of a state is claimed to be in contra-
vention of the national constitution, go by appeal or writ of error
directly to the supreme court, it would seem to follow as a logical
sequence that they cannot come to this court from final judgments
or decrees rendered by the circuit courts. And such appears to
be the construction placed upon the act by the supreme court and
the circuit courts of appeals in the following cases: Penn Mut. Life
Ins. Co. v. City of Austin, 168 U. S. 685, 18 Sup. Ct. 223, 42 L. Ed.
626; City of Walla Walla v. Walla Walla Water Co., 172 U. S. 1,
19 Sup. Ct. 77, 43 L. Ed. 341; Scott v. Donald, 165 U. S. 58, 17 Sup.
Ct. 265, 41 L. Ed. 632; Holder v. Aultman, 169 U. S. 88, 18 Sup. Ct.
269, 42 L. Ed. 669; Horner v. U. S., 143 U. S. 570, 12 Sup. Ct. 522,
36 L. Ed. 266; Hastings v. Ames, 32 U. S. App. 485, 15 C. C. A.
628, 68 Fed. 726; Wrightman v. Boone Co., 31 C. C. A. 570, 88 Fed.
435; City of Indianapolis v. Central Trust Co., 27 C. C. A. 580, 83
Fed. 529.

It was said by Mr. Justice White, as the organ of the court, in the
case first cited (168 U. S., at page 694, 18 Sup. Ct., at page 226, and
42 L. Ed., at page 630):

"By the fifth section of the act of March 3, 1891, c. 517 (26 Stat. 826),
creating the circuit courts of appeals, jurisdiction is conferred on this court
to review by direct appeal any final judgment rendered by the circuit court
'in any case in which the constitution or law of a state is claimed to be in
contravention of the constitution of the United States.' There can be no
doubt that the case at bar comes within this provision. The complainants

in their bill in express terms predicated their right to the relief sought upon the averment that certain ordinances adopted by the municipal authorities of the city of Austin, and an act of the legislature of the state of Texas referred to in the bill, impaired the obligations of the contract which the bill alleged had been entered into with the complainants by the city of Austin, and that both the law of the state of Texas and the city ordinances were in contravention of the constitution of the United States. No language could more plainly bring a case within the letter of a statute than do these allegations of the bill bring this case within the law of 1891."

And at page 695, 168 U. S., at page 227, 18 Sup. Ct., and at page 630, 42 L. Ed., the court further said:

"But the words of the statute which empower this court to review directly the action of the circuit court are that such power shall exist wherever it is claimed on the record that the law of a state is in contravention of the federal constitution. Of course, the claim must be real, * * * not fictitious and fraudulent."

In the present case, jurisdiction of the circuit court is claimed by the appellee on the ground that the suit is one arising under the constitution and the laws of the United States. "Your orator shows," employing the language of the amended bill, "that the present suit arises under the constitution and laws of the United States; and your orator invokes the jurisdiction of the circuit court of the United States in order to set up and enforce the protection guarantied by the constitution of the United States to contract rights, and to defeat and prevent the effort of the city to impair the obligation of the aforesaid contract." While it is true that jurisdiction is also claimed on the ground of diversity of citizenship, yet, if the parties be arranged according to their respective interests in the subject-matter of the suit, which may always be done in determining jurisdictional questions, it is extremely questionable whether the circuit court was invested with jurisdiction, except upon the ground that the suit was one arising under the constitution of the United States. It also clearly appears that the appellee relies upon the constitution as a protection and shield of defense against the alleged arbitrary, unauthorized, and hostile acts of the city of Dawson. It is strenuously insisted by the appellee that the ordinance of February 21, 1890, constitutes a valid and binding contract between the city of Dawson and the Dawson Waterworks Company, and that the constitution forbids its obligation to be impaired as the city attempted to impair it, by the passage of the repudiating ordinance of June, 1894, and other ordinances subsequently enacted. "These ordinances," said the supreme court in the case to which reference has already been made, "were but the exercise by the city of a legislative power which it assumed had been delegated to it by the state, and were therefore, in legal intendment, the equivalent of laws enacted by the state itself." Penn Mut. Life Ins. Co. v. City of Austin, supra; City of Walla Walla v. Walla Walla Water Co., supra; City Ry. Co. v. Citizens' St. R. Co., 166 U. S. 557, 17 Sup. Ct. 653, 41 L. Ed. 1114. Here, then, is a real substantial claim (not fictitious or fraudulent) that the city of Dawson is endeavoring to set aside and repudiate its solemn contract as evidenced by the ordinance of February 21, 1890; and the contract clause of the constitution is invoked by the

appellee to avert the threatened danger. It is also contended by the appellee that the refusal of the city to pay for water according to the requirements of the contract, or to levy taxes, or to be further bound by its contract, and the wrongful conduct of the city in threatening to proceed to erect and operate a rival system of waterworks for fire protection and for supplying the inhabitants of the city with water, would have the effect, unless restrained and prevented, of depriving the waterworks company and the holders of its bonds of their property without due process of law, in contravention of the constitution of the United States. Thus, we have before us a case involving the construction and application of the constitution of the United States, and one in which the ordinances of the municipality of Dawson are claimed to be in contravention of the constitution. That the appeal in such a case should go directly to the supreme court from a final decree of the circuit court, we think has been plainly shown; and that an appeal from an interlocutory order of the circuit court granting an injunction in a like case does not lie to this court will be made manifest by consulting the following additional authorities: Railroad Co. v. Adams, 35 C. C. A. 635, 93 Fed. 852; City of Macon v. Georgia Packing Co., 9 C. C. A. 262, 60 Fed. 781; Holt v. Manufacturing Co., 25 C. C. A. 301, 80 Fed. 1; City of Indianapolis v. Central Trust Co., 27 C. C. A. 580, 83 Fed. 529; Town of Westerly v. Westerly Waterworks Co., 22 C. C. A. 278, 76 Fed. 467. In the case last cited it is said by the court:

"At the argument it was urged that the decision of these cases on final hearing may be based on questions entirely apart from the constitutional questions involved. The argument is plausible, but delusive. If the decision were so resting on other than constitutional grounds, still, on any appeal from it, the constitutional questions would remain in the case, and might require determination by the appellate court,—a determination which a circuit court of appeals has no authority to pronounce. When constitutional questions are present, the whole case must go to the supreme court."

In the case of Wrightman v. Boone Co., 31 C. C. A. 570, 88 Fed. 435, Judge Sanborn, speaking for the court, at pages 572, 573, 31 C. C. A., and page 437, 88 Fed., used the following language:

"A careful examination of these sections of the act of congress in Hastings v. Ames, 32 U. S. App. 485, 15 C. C. A. 628, 68 Fed. 726, and in Pauley Jail Bldg. & Mfg. Co. v. Crawford Co., 28 C. C. A. 579, 84 Fed. 942, led us to the conclusion that, if it is claimed that a law of a state is void because it contravenes the constitution of the United States, a circuit court of appeals has no jurisdiction of the case, although it may involve the consideration of many other questions."

We are of the opinion that the appeal in this case should be dismissed, and it is so ordered.

McCORMICK, Circuit Judge. I am unable to concur in the judgment of the court in this case. The complainant invoked the jurisdiction of the circuit court on the ground of diverse citizenship, and on the further ground that its case presented a federal question. The appellants, who were respondents in the circuit court, contended that neither of these grounds existed in fact, and contended further that the case did not show matter within the equity jurisdiction of the circuit

court. The circuit court retained jurisdiction, and passed the decree set out in the opinion of the majority. That decree, being interlocutory, will not support an appeal to the supreme court, and cannot be reviewed at all, in advance of final hearing and decree, unless it can be reviewed by this court. The appellants, not waiving, but insisting on, their objections to the jurisdiction of the circuit court, do not question the jurisdiction of this court to review the interlocutory decree, and the appellee has not questioned the jurisdiction of this court to entertain this appeal. It is by no means clear to me that if no injunction had been granted, and the case had proceeded to final hearing and decree, appeal would lie only to the supreme court. U. S. v. Jahn, 155 U. S. 109, 15 Sup. Ct. 39, 39 L. Ed. 87; Horner v. U. S., 143 U. S. 570, 12 Sup. Ct. 522, 36 L. Ed. 266; City of New Orleans v. Benjamin, 153 U. S. 411, 14 Sup. Ct. 905, 38 L. Ed. 764; Green v. Mills, 16 C. C. A. 516, 69 Fed. 852, 30 L. R. A. 90. It seems to me that the better construction of the statutes and of the adjudged cases of controlling authority requires that we should treat the provisions of section 7 of the act creating the circuit courts of appeals as highly remedial, and intended to afford a speedy review by an appellate tribunal of all interlocutory orders or decrees granting or continuing an injunction. On such an appeal we do not necessarily pass on the merits of the case as presented in the circuit court. Nor are we even required, on such an appeal as this, to pass conclusively on the question of the jurisdiction of the circuit court, where, as in this case, that question is strenuously put in issue. There may be, and there have been, proper cases in which this court, on an appeal like this, would be justified, and perhaps required, to consider and determine the merits of the whole case, but that should not usually be done. It is much safer to wait until the suit has advanced to a final hearing and decree. The practical effect of dismissing this appeal is to affirm the action of the circuit court in passing the interlocutory decree. It may well be that, if we entertained jurisdiction on this appeal, we would find nothing in the record to justify us in reversing that decree; but, whether we reversed it or affirmed it, the suit would proceed under the chancery rules much the same in either case, except that in case of reversal the appellants might, if they were so advised, and subject to their liability to answer in damages, proceed with the work which the injunction has arrested. No question having been made by either of the parties to this appeal as to the jurisdiction of this court in this case, it seems to me that it is not a case in which this court should itself raise that question.