United States v. Radolico.

# THE UNITED STATES OF AMERICA, Plff.,

*v.*

# GUISEPPE RADOLICO, CARMELO, GRASSO, AND VINCENZO PELEGRINO, Dfts.

San Juan, Law, No. 1405.

### APPLICATION FOR WRIT OF HABEAS CORPUS.

Habeas Corpus—Foreigners.

　　1. The court ought to grant habeas corpus in any case where injustice would be done by refusal, and this applies to friendly aliens.

Habeas Corpus—Grand Jury.

　　2. Where the commitment is awaiting the action of the grand jury, which is in session, the court may decline to entertain habeas corpus.

Habeas Corpus—Not Always Available.

　　3. A man is entitled to justice, that is to say, to a legal accusation, trial, and sentence. Habeas corpus will not be granted by one court, to interfere with another court, or with any legal procedure, unless there is unreasonable delay. Between the action of a Federal commissioner and indictment, the sole question is the jurisdiction of the commissioner.

Habeas Corpus—"All the Evidence."

　　4. An agreement that a transcript contains "all the evidence" is not binding upon the court when the question is as to jurisdiction of a Federal commissioner.

Habeas Corpus—Evidence before Commissioner.

　　5. Even if the evidence before the commissioner is insufficient, the court will not presume against jurisdiction. The manner of the witnesses or official knowledge of the commissioner may have supplied elements not appearing in the record.

　　Note.—On right of person wrongfully brought into jurisdiction to be released on habeas corpus, see note in 12 L.R.A.(N.S.) 225.

United States v. Radolico.

Seaman—Speedy Trial.
    6. When a case comes up just before the summer vacation the court may direct the district attorney to bring it before the grand jury immediately.

Opinion filed August 16, 1920.

---

*Daniel F. Kelley, Esq.,* for plaintiff.

*Miguel A. Muñoz, Esq.,* for defendants.

HAMILTON, Judge, delivered the following opinion:

1. In the first place, as to the writ of habeas corpus in general, there is no doubt that the court ought to grant it in any case where injustice would be done by not granting it, that is to say, everyone has a right, I take it that all friendly aliens have a right to. this writ, unless there is some reason to the contrary. United States ex rel. Standing Bear v. Crook, 5 Dill. 453, Fed. Cas. No. 14,891. If we had a treaty with China, it is very probable there would be in it something to the contrary, but unless there is shown that there is some such treaty stipulation, I take it that on the general principles of comity a friendly alien is entitled to a writ of habeas corpus. The petitioners are properly before me.

2. The next question would be as to the right of this court to go into the matter at all, when it is shown that these men were committed by the United States commissioner upon a proper complaint, and that the commitment itself under which the Jailer Acts is regular. There is no question raised as to

the regularity of the proceedings themselves. The point urged is that this charge was larceny in some shape and that the proceedings before the commissioner did not show that the offense was committed upon the high seas, that the ship in question is an American ship, that these goods belonged to anybody in particular. This case comes up, not because the commissioner ruled out anything, but because such evidence was not offered before the commissioner.

The main question for me to decide is: Can I interfere by habeas corpus under such circumstances? The commitment was to await the action of the grand jury, as is usual in such cases. The grand jury is in session, at all events it has not been discharged and is available; can the court entertain a writ of habeas corpus under those circumstances? My impression is adverse. The case cited of Horner v. United States, 143 U. S. 570, 36 L. ed. 266, 12 Sup. Ct. Rep. 522, decided that where a man was committed for the offense of sending lottery tickets through the mail and there was a question of what was a lottery ticket, it was a question of law, and the court could not intervene. It was a law point that should arise in the proper trial of the case and should come up at the indictment by the grand jury and upon proper proceedings in the course of the trial. It is argued that the present case is different, because there is no question that larceny is a proper offense, triable by this court. Here it is a question of sufficient evidence.

In the first place let me say I am averse to interfering for this reason: I think that it will lead to bad results. There is no reason why anybody who is committed by a commissioner should not the next day, or the same day as I believe in this

United States v. Radolico.

case, apply for writ of habeas corpus. It is true that the commissioner might be more careful and that it might be that there was no ground for the writ; but the court would have to hear the application nevertheless. It would have to go into all the evidence to see whether there has been some fault on the part of the commissioner. It is quite possible the court would have to be hearing a great many of these cases, which would take up time, although the result would be to sustain the commissioner. I think this would be a very bad practice unless the law requires me to do it.

3. The next phase is, does the law require it? It seems to me not. The basis of the argument is that any man who is in jail has the right to appeal to a judge, whether local or Federal, —it depends upon the particular class of offense,—to decide whether he is justly in jail or not. I do not take it that the writ of habeas corpus goes so far. The writ is ordained by an organized and civilized government and is meant for the purpose of doing justice. Justice is not confined to one day; it is not one act. There is no such thing as an abstract justice apart from a method of enforcement. Justice consists in a course of legal proceedings. A man is not entitled at all times and at all places to justice, but he is entitled to proceedings that will result in justice. These embrace a legal accusation, trial, and sentence. I think it goes without saying that, even if there were good cause otherwise, I could not interfere with a local court while it is in the course of trying a case. While the judge is sitting on the bench, I should not interfere; I should let him get through and determine one way or the other. In the same way I could not interfere with a United States commissioner while he was trying a case. I could not anticipate

what the result would be. The course of justice in regard to a
criminal is not limited to what is done before the commissioner,
it is not merely what is done here, it is not what is done before
the grand jury; it is the whole proceeding. If these men are
in the course of having justice done to them according to the
Anglo-American practice, I do not think I should interfere,
and that practice is for a complaint to be made, a hearing to
be had before the commissioner, and a commitment to await
the action of the grand jury, which reviews more fully than
I am asked to do here. I am asked to pass upon the informal-
ities of the case; the grand jury looks into the whole circum-
stances to see whether there is any justice in that case or not.
The actual result, whether intended or not, will be that it may
enable an actual criminal because of some informality in the
evidence introduced to take advantage of the situation and
have the judge free him, when, if the judge would wait a few
days, the grand jury would have everything before them, and
if the man was innocent, the charge would be thrown out;
otherwise he would be indicted. I do not take it that I am
required to interfere at any time between the swearing out
of the warrant and the action of the grand jury unless there
is some unreasonable delay. Upon action of the grand jury,
there is an indictment found or denied. I take it that is the
course of justice meant by Horner v. United States. A man
is not denied any right under the Constitution or under the
common law if he is refused habeas corpus under the circum-
stances; because the case is really in course of trial. I do not
think that one department of justice should interfere with an-
other. Such seems to be the principle of that case. Whatever
latitude there may be under some circumstances as to the court's

United States v. Radolico.

examination, between commissioner and indictment the point to be inquired into is jurisdiction.

4. Another thing. The transcript of evidence offered it is agreed is all the evidence in the case before the commissioner. The commissioner is not a court of record and I do not know that I have got hold of all, that when he has acted I am to presume that he did not have anything else before him just because the stenographer or counsel say so. If it were a court of record and exceptions taken, a bill of exceptions, that is different. That is what a bill of exceptions is for. An upper court is not going to interfere with the proceeding below except in case of a bill of exceptions certified by the judge himself, and I would go very slow about admitting this agreement as to evidence under the circumstances.

5. Suppose, however, that the transcript of evidence is to be considered as it stands; what will be the result?

It is argued that there are two fatal defects. The one is that there is no proof the robbery occurred upon an American vessel, but this is not conclusive. Suppose the commissioner, who is a United States official, knows from some other examination or in some official way that the vessel was American; is this court upon attack from the outside to presume him out of this information or, going further, is this court to assume that he had not certain information merely because he did not see proper to list it in the evidence noted? The vice of the argument in the case at bar is assuming that the commissioner while acting merely as a committing magistrate has to put all his information in the shape of evidence noted on the record. That would be true if he were a trial court, but such he is not.

Somewhat the same thing may be observed as to the point

United States v. Radolico.

that there was no proof of the ownership of the goods. Upon the trial the goods have to be proved to belong to someone, but it is not so clear that upon the committing examination this proof has to be explicit. Necessarily the goods belong to someone, and the manner of the prisoners might well show that there was probable cause to think that the goods did not belong to them. This did not appear in the written evidence and yet there might be sufficient to send them for further examination before the grand jury. It might well be, if this court should undertake to examine the witnesses anew it would find whether or no there was such probable cause; but what would be the use of an examining magistrate if the court has to undertake upon collateral attack to go over the same ground?

On the whole it does not appear to the court that it can say there was not sufficient cause to send the prisoners to the grand jury for full examination, and it does not appear therefore that the court should interfere at this stage of the proceedings.

6. It so happens that this case comes up but a short time before the usual summer vacation of the court. Nevertheless there will be a substitute judge who can be applied to to prevent any failure of justice. The prisoners are foreigners, seamen, and it may well be that they have no means of support. That what would be a speedy trial for residents of Porto Rico might not be a speedy trial for them under these circumstances, and it may well be that they should have the opportunity of an early examination by the grand jury. The court therefore will direct, and hereby does direct, the district attorney to bring this case and witnesses upon the return of the steamer Coamo to this port, or as soon thereafter as possible, before the grand jury, so that the prisoners may have an early investigation.

The writ of habeas corpus is therefore discharged, but the prisoners will stand released upon the bonds already given to await the action of the grand jury as above.

It is so ordered.