**UNITED STATES ex rel. PAPAIOANU v. MESSICK, United States Marshal.**

No. 8.

United States District Court
D. Delaware.
Sept. 16, 1949.

John Van Brunt, Jr. (of Killoran & Van Brunt), Wilmington, Del., for relator.

Daniel L. Herrmann, Asst. U. S. Atty, Wilmington, Del., for respondent.

LEAHY, Chief Judge.

The petitioner is charged with income tax evasion as defined by § 145(b) of the Internal Revenue Code, 26 U.S.C.A. § 145 (b). At the Commissioner's hearing he determined probable cause had been shown. The accused was taken into custody. From the order of commitment petitioner seeks a writ of habeas corpus.

The charge is petitioner was guilty of income tax evasion for the year 1943. During that year, he participated as equal partner in the operation of a hotel business in Rehoboth, Delaware, and also operated a liquor store at Lewes, Delaware, from March 8, 1943, to the end of the year.

In May, 1946, an internal revenue agent, who testified at the hearing before the Commissioner, examined petitioner's return for the year 1943 and determined a deficiency. The agent concluded there was an apparent net income greatly in excess of that reported. This conclusion was based on a comparison of the net worth of petitioner, as estimated by the agent, at the beginning and end of 1943.

The agent admitted that records of the business such as cancelled checks and receipts were available and appeared to reflect accurately the actual transactions. He also admitted the records were kept in a businesslike manner and the books and records did not appear on their face to be false or fraudulent. It is further apparent petitioner cooperated with the agent and freely made the books and records available to him.

The cross-examination of the agent makes it clear that the agent's conclusion of a deficiency was based on a comparison of net worths rather than from an examination and audit of the books. The following testimony is most significant:

"Q. Mr. Grady, as I understand your answer to the last question, that is, you did not make an audit of the taxpayer's books for the year 1943 covering his two hotels for the purpose of determining what his income per books was, is that correct? (R. 29) A. I did try to determine the net income from that on that basis; but later computing it on the net worth basis a larger income was disclosed, which I used. (R. 29)

"Q. Now with respect to the Lewes package store, did you there also attempt to reconstruct his business income from his books? A. I did. I did attempt to do that.

"Q. Did you reach a final result in either case, in the case of either the hotels or the package store, with respect to his income from his books, in any case? A. No, I don't believe I did.

"Q. You did not carry all the way? A. That's right. After going through the net worth, I used the net worth basis. (R. 30)

\* \* \* \* \* \*

"Q. \* \* \* I think I asked you if you conclude that the books were fair \* \* \* on their face, or were they on their face fraudulent, containing material alterations, erasures. A. There were no alterations there. It was just the examination, I mean that the larger net income was determined under the other method. (R. 36)

\* \* \* \* \* \*

"Q. \* \* \* Did you reach any conclusion, if you had reached that reconstruction of sales, would you have used business expense items which appear in the books? A. You see, for the purpose of reconstruction there, that only applies to—

"Q. The sales? A. In sales of liquor and cost of liquor sold.

"Q. You are right. A. Without any reference to any other expenses.

"Q. Correct, You did get into that? A. I looked into that, that is right.

"Q. You did not reach any conclusion then? A. No, that's right." (R. 38)

At the hearing and in his argument here, petitioner seeks to show there are deficiencies in the agent's testimony and examination even on a net worth basis. The following testimony is illustrative:

"Q. Mr. Grady, did you allow for any cash on hand at all? (R. 18) A. No, I didn't.

"Q. Did you question the taxpayer as to whether he had any cash on hand? A. I did. But the only thing that I could take into account was what was actually shown in the banks. (R. 18)

\* \* \* \* \* \*

"Q. You did ask him how much cash he had? A. Yes, *of course, he couldn't remember.*" (R. 42)

Petitioner contends that the testimony at the hearing fails to establish probable cause for the crime charged, for in a situation where books and records are kept in a businesslike manner a determination of deficiency based exclusively on a comparison of net worths is erroneous under "correct" and current interpretation of the applicable law. And petitioner further con-

tends that the Commissioner's "error" in finding probable cause may be tested by this petition. The Government denies the validity of both these contentions.

1. Since I think I should not review the Commissioner's finding of probable cause at this stage, I shall assume that petitioner is correct, i. e., in view of the applicable law a comparison of net worths is not sufficient to establish the crime charged —especially where accurate books and records are available. And I shall assume that if no additional evidence were offered at the trial, a verdict would be directed.

■ 2. The writ should be refused. I follow the Government's authorities for two reasons. First, they are precisely apposite in that they deal, as here, with appeals from findings of probable cause by United States Commissioners. Petitioner's cases, on the other hand, while undeniably containing language supporting his contention, are, for the most part, appeals from Courts rather than Commissioners. Some of petitioner's cases, moreover, are plainly inapposite. Ex parte Bollman, 4 Cranch 75, 8 U.S. 75, 2 L.Ed. 554, is illustrative. That case arose upon original applications to the Supreme Court for writs of habeas corpus to review actions of the Circuit Court of the District of Columbia, sitting as a committing magistrate, holding the petitioners for trial for treason. The Court defined treason and concluded that the evidence did not show the requisite elements of the crime. This does not aid petitioner. Here the crime charged is complete if there is a wilful failure to report income. There is evidence of unreported income; petitioner's plaint is simply that the method of calculation employed is, under the applicable law, an erroneous one. Such cases, as illustrated, then, are clearly distinguishable.

■ Second, I agree with the arguments advanced in the cases relied on by the Government. The writ of habeas corpus should not be used as a mere substitute for a writ of error, to reverse an erroneous judgment of a Commissioner on the existence of probable cause. It issues only where the Commissioner has acted without jurisdiction, or has exceeded his jurisdiction, or the Act on which the prosecution is based is unconstitutional, or where the hearing procedure violates some constitutional prohibition. Where none of these defects are present and where, as here, the Commissioner has authority to commit persons charged with such offenses and has acquired full jurisdiction of the person of the accused, the order of commitment will not be disturbed however much the Court may disagree with the Commissioner on probable cause. Horner v. United States, 143 U.S. 570, 12 S.Ct. 522, 36 L.Ed. 266; In re Boyd, 8 Cir., 49 F. 48; Ex parte Jones, C.C., 96 F. 200; Cleugh v. Strakosch, 9 Cir., 109 F.2d 330; U. S. v. Fogel, et al., D.C., 22 F.2d 823; Ex parte Jim Hong, 9 Cir., 211 F. 73; U. S. v. Greene, D. C., 108 F. 816; Ex parte Rickelt, C. C., 61 F. 203. Whether a deficiency based on a comparison of net worths is sufficient for a conviction under the circumstances of this case must and will be determined by this Court at trial. If the Court determined this matter in this proceeding and in advance of trial, it would, in effect, be affording petitioner a remedy of appeal or writ of error from the Commissioner. And such is not the proper office of the writ of habeas corpus. Accordingly, the application for the writ must be refused.