## UNITED STATES *v.* THOMAS.

CERTIFICATE OF DIVISION IN OPINION FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF WISCONSIN.

No. 668. Argued October 20, 1893. — Decided February 5, 1894.

Under the act of March 3, 1885, c. 341, 23 Stat. 362, the Federal court in Wisconsin has jurisdiction to try an Indian charged with murdering another Indian within the limits of section 16 in a township in that State which is embraced within and forms part of the La Court Oreilles reservation for the Chippewa Indians.

A Chippewa Indian being indicted in the District Court of the United States for the Western District of Wisconsin for the murder of another Indian on the Chippewa reservation, it appeared at the trial that the offence took place in township 16, one of the townships set apart for the State as a school reservation. The defendant being found guilty, a motion was made for a new trial. This motion was heard before the District Judge and the Circuit Judge. They differed in opinion on the question of jurisdiction and certified the question here. With it they sent up a transcript of the whole record. *Held,*

(1) That it was irregular to send the entire record with a certificate of division in opinion, and that, generally, there could be no such certificate on a motion for a new trial; but that under the circumstances, this court would consider the question certified;

(2) That the trial court had jurisdiction, and the motion to set aside the verdict and grant a new trial must be denied.

THIS case came before the court on a certificate of division in opinion between the Judges of the Circuit Court for the Western District of Wisconsin, on the question of its jurisdiction to try the defendant upon the indictment against him. The defendant, an Indian of the Chippewa tribe, was indicted in that court for the murder of one David Corbin, a half breed, of the same tribe, within the limits of La Court Oreilles Indian reservation, in Wisconsin, and was convicted. The evidence tended to show that the offence was committed in section sixteen in a township in Sawyer County of that State, embraced within the reservation; and on that ground the counsel for the defendant moved to set aside the verdict, and for a new

trial, contending that by the provisions of the enabling act by which Wisconsin was admitted into the Union, section sixteen in every township in Wisconsin was ceded to the State for school purposes, and could not, therefore, be subsequently taken by the United States and set off as part of an Indian reservation.

La Court Oreilles reservation, in the State of Wisconsin, was set apart for the Chippewa tribe of Indians, and embraces three townships in area, but by reason of the extension of several meandered lakes, covers about seven townships. The reservation was approved by the treaty of 1854. The survey of the lands of this portion of the State had not then been made, and the townships which compose the reservation were not surveyed until the year 1855, and the lands were not selected until 1859. The State sold, in 1865, section sixteen to parties who cut off the timber, but otherwise made no use of the land except for the erection of a cabin whilst removing the timber. The land had been used by the Indians continuously from time immemorial previous to its reservation, and after it was denuded of timber they continued to hunt and travel over it.

. Section 9 of the act of Congress of March 3, 1885, c. 341, 23 Stat. 362, 385, making appropriations for the Indian Department for the fiscal year ending June 30, 1886, provides: " That immediately upon and after the date of the passage of this act all Indians committing against the person or property of another Indian or other person any of the following crimes, namely, murder, manslaughter, rape, assault with intent to kill, arson, burglary, and larceny *within any Territory of the United States, and either within or without any Indian reservation*, shall be subject therefor to the laws of such Territory relating to said crimes, and shall be tried therefor in the same courts and in the same manner, and shall be subject to the same penalties, as are all other persons charged with the commission of said crimes, respectively; and the said courts are hereby given jurisdiction in all such cases; and all such Indians committing any of the above crimes against the person or property of another Indian or other person *within the bounda-*

*ries of any State of the United States, and within the limits of any Indian reservation,* shall be subject to the same laws, tried in the same courts and in the same manner, and subject to the same penalties, as are all other persons committing any of the above crimes within the exclusive jurisdiction of the United States."

The motion to set aside the verdict and for a new trial was argued before the Circuit Judge and the District Judge, composing the court, and they differed in opinion. The Circuit Judge held that the title to the township upon which the offence was committed was in the State of Wisconsin from the time of its admission into the Union, and consequently could not afterwards be used by the United States as a part of an Indian reservation. He was therefore of opinion that the court had no jurisdiction over an offence committed in that township, under the act of Congress upon which it assumes to take jurisdiction of this case. The District Judge, on the contrary, held that the right of occupancy of the Chippewa Indians to the land composing the reservation had never been divested, and that until so divested the title to section sixteen could not vest in the State of Wisconsin under its enabling act; and, further, that, independent of any question of title, it was competent for the United States, having set apart certain lands within the State to be used as an Indian reservation, to provide for the protection of the Indians thereon and for the punishment of offences committed against them, and therefore he was against granting the motion.

The certificate sent to us is as follows: "The motion of the defendant to set aside the verdict and for a new trial, etc., came on to be argued, and was argued by the counsel for the respective parties, and upon the hearing it occurred as a question, 'Whether, as the evidence shows that the murder was committed upon section sixteen, in township forty north, of range eight west, in the State of Wisconsin, said section sixteen being within the outside limits of the said Indian reservation, and having been previously, in 1859, settled, platted, and set apart by the United States as a part and parcel of said reservation and ever after occupied by said Indians as such, though

claimed and sold by the State of Wisconsin as and for a part of the school land previously ceded to said State by act of Congress, such murder was committed within the limits of said reservation within the meaning of section 9 of chapter 341 of the act of Congress, approved March 3, 1885, so as to give the Federal courts jurisdiction of the offence.' On which question the opinions of the judges were opposed, which said opinions are herewith transmitted." And the court added: " The court considering, as the whole case now turns upon the question of jurisdiction in this court and no proceedings can be had until that question is determined, and that the same question would arise in any subsequent trial, that it is not one addressed to the discretion of the court but is proper to be certified to the Supreme Court for its opinion; whereupon, on motion of the United States, by their attorneys and counsel, it is ordered that the point upon which the disagreement hath happened as herein stated under the direction of the judges, including the entire record of proceedings in court, the evidence on the trial, and statement of facts as stipulated by the attorneys herein, also copy of the said indictment, be, and the same hereby are, made a part of the transcript certified under the seal of this court, according to the request of the United States by their counsel, to the Supreme Court, that the matter may be finally decided."

*Mr. Solicitor General* for the United States.

No appearance for Thomas.

MR. JUSTICE FIELD, after stating the case, delivered the opinion of the court.

The judges of the Circuit Court have sent up with the certificate of their division of opinion the entire record of the proceedings in that court, including the evidence on the trial and the agreed statement of facts by counsel. Such matters outside of the certificate, not constituting part of the pleadings in the case or of the public statutes or treaties bearing upon the point certified, cannot be considered by us in dispos-

ing of the question presented. The division of opinion arose on the motion to set aside the verdict and for a new trial, the judges differing as to the jurisdiction of the court under the act of Congress upon the facts presented. Until this question is disposed of there can be no further proceedings in the case; and as it arises upon the statute as applied to the facts, this court may very properly consider and answer it, although irrelevant matter, which will not be regarded, is also embraced in the certificate.

It is the general doctrine that there can be no certificate of a division of opinion between the judges of the Circuit Court on a motion for a new trial, as such motion usually rests in the discretion of the court, and, therefore, properly presents no questions for our determination. *United States* v. *Rosenburgh*, 7 Wall. 580. But such is not always the case. Sometimes a motion of the kind or of a similar kind may present for consideration a question going directly to the merits and a decision of which may determine the point in controversy. In such instances the court will consider the question submitted on a certificate of division of opinion between the judges of the court below. Thus in *United States* v. *Wilson*, 7 Pet. 150, 160, the question arose between the judges of the Circuit Court whether a person convicted of a capital offence, who had received a pardon, could derive any advantage from it without bringing the same judicially before the court by appeal, motion, or otherwise. Upon this question the judges were opposed in opinion, and it was stated under their direction, and certified to this court and here considered and decided. The court regarded the motion as one going to the merits of his case, having a direct bearing upon the punishment to be imposed, and not a question determinable in the discretion of the court, and held that it could properly consider the question upon a certificate of division in opinion of the judges of the Circuit Court.

Holding, therefore, that we can consider the question certified, disregarding the irrelevant matter accompanying the certificate, we proceed to its examination.

The treaty concluded October 4, 1842, and proclaimed in

March, 1843, 7 Stat. 591, between the United States and the Chippewa Indians, ceded to the United States a large tract of land between Lake Superior and the Mississippi. In article 5 it recited that the whole country between those points had always been understood as belonging, in common, to the Chippewas. In article 2 it declared that the Indians stipulated for the right of hunting on the ceded territory, with the other usual privileges of occupancy, until required to remove by the President of the United States; and that the laws of the United States should be continued in force, in respect to their trade and intercourse with the whites, until ordered by Congress otherwise. And in article 7 it declared that the treaty should be obligatory upon the contracting parties when ratified by the President and Senate of the United States.

The Indians have never been removed from the lands thus ceded, and no executive order has ever been made for their removal, and no change has taken place in their occupancy of the lands, except as provided by the treaty of September 30, 1854, 10 Stat. 1109. By that treaty the Chippewas ceded a large portion of their territory, previously retained in Wisconsin and elsewhere, and provision was made in consideration thereof for the formation of permanent reservations for their benefit, each to embrace three full townships, and their boundaries to be established under the direction of the President. One of these included the tract comprised in the La Court Oreilles reservation. In the provision for these reservations nothing was said of the sixteenth section of any townships, and it is clear that it was not contemplated that any section should be left out of any one of them. The land reserved was to be, as near as possible, in a compact form, except so far as the meandered lakes were concerned. When the townships composing these reservations were surveyed, the sixteenth section was already disposed of in the sense of the enabling act of 1846. It had been included within the limits of the reservations.

As it will be seen, by the treaty of 1842 ratified in 1843, which was previous to the enabling act, the Indians stipulated

for the right of occupancy to the lands. That right of occupancy gave them the enjoyment of the land until they were required to surrender it by the President of the United States, which requirement was never made. Whatever right the State of Wisconsin acquired by the enabling act to the sixteenth section was subordinate to this right of occupancy for which the Indians stipulated and which the United States recognized. The general rule established by the Land Department in reference to the school lands in the different States is that the title to them vests in the several States in which the land is situated, subject to any prior right of occupation by the Indians or others which the government had stipulated to recognize.

Mr. Justice Lamar, while Secretary of the Interior, had frequent occasion to consider the nature and effect of the grant of school lands, where the title was at all encumbered or doubtful; and on this subject he said (6 L. Dec. 418) that the true theory was this: "That where the fee is in the United States at the date of survey, and the land is so encumbered that full and complete title and right of possession cannot then vest in the State, the State may, if it so desires, elect to take equivalent lands in fulfilment of the compact, or it may wait until the right and title of possession unite in the government, and then satisfy its grant by taking the lands specifically granted." And this view he considered "as fully sustained by the decision of the courts and the opinions of the Attorneys General," and cited in support of it *Cooper* v. *Roberts*, 18 How. 173; 3 Opins. 56; 8 Opins. 255; 9 Opins. 346; 16 Opins. 430; *Ham* v. *Missouri*, 18 How. 126.

In *Beecher* v. *Wetherby*, 95 U. S. 517, 525, this court had occasion to consider the nature of the right which Wisconsin took to the sixteenth section in the townships of that State by virtue of her enabling act, which declared that it was an unalterable condition of her admission into the Union that section sixteen of every township of the public lands of the State which had not been sold or otherwise disposed of, should be granted to her for the use of schools. The court said that this compact, whether considered as merely promissory on the

part of the United States, and constituting only a pledge of a grant in future, or as operating as a transfer of the title to the State, upon her acceptance of the proposition, as soon as the sections could be afterwards identified by the public surveys — in either case the lands which might be embraced within those sections were appropriated to the State, subject to any existing claim or right to them; that for many years before Wisconsin became a State various portions of the territory within her limits were occupied by a tribe of Indians, but the right which they had was only that of occupancy. The court held that the fee was in the United States, subject to that right, and could be transferred whenever they chose, but added, "the grantee would take only the naked fee, and could not disturb the occupancy of the Indians; that occupancy could only be interfered with or determined by the United States."

We, therefore, are of opinion that by virtue of the treaty of 1842, in the absence of any proof that the Chippewa Indians have surrendered their right of occupancy, the right still remains with them, and that the title and right which the State may claim ultimately to the sixteenth section of every township for the use of schools is subordinate to this right of occupancy of the Indians, which has, so far as the court is informed, never been released to any of their lands, except as it may be inferred from the provisions of the treaty of 1854. That treaty provided for permanent reservations, which included the section in question. The treaty did not operate to defeat the prior right of occupancy to that particular section, but, by including it in the new reservations, made as a condition of the cession of large tracts of land in Wisconsin, continued it in force. The State of Wisconsin, therefore, had no such control over that section or right to it as would prevent its being set apart by the United States, with the consent of the Indians, as a part of their permanent reservation. So, by authority of their original right of occupancy, as well as by the fact that the section is included within the tract set aside as a portion of the permanent reservation in consideration of the cession of lands, the title never vested in

the State, except as subordinate to that right of occupation of the Indians.

But, independently of any question of title, we think the court below had jurisdiction of the case. The Indians of the country are considered as the wards of the nation, and whenever the United States set apart any land of their own as an Indian reservation, whether within a State or Territory, they have full authority to pass such laws and authorize such measures as may be necessary to give to these people full protection in their persons and property, and to punish all offences committed against them or by them within such reservations.

This subject was fully considered by this court in *United States* v. *Kagama*, 118 U. S. 375. It was contended that the act of Congress extending its protection and jurisdiction over the Indians within the limits of the State encroached upon matters within the exclusive jurisdiction of the State. But the court answered this objection, speaking through Justice Miller, by observing that the act " does not interfere with the process of the state courts within the reservation, nor with the operation of state laws upon white people found there. Its effect is confined to the acts of an Indian of some tribe, of a criminal character, committed within the limits of the reservation.

" It seems to us that this is within the competency of Congress. These Indian tribes are the wards of the nation. They are communities *dependent* on the United States. Dependent largely for their daily food. Dependent for their political rights. They own no allegiance to the States and receive from them no protection. Because of the local ill-feeling, the people of the State where they are found are often their deadliest enemies. From their very weakness and helplessness, so largely due to the course of dealing of the Federal government with them and the treaties in which it has been promised, there arises the duty of protection, and with it the power. This has always been recognized by the executive and by Congress, and by this court whenever the question has arisen. . . . .

" The power of the general government over these remnants of a race once powerful, now weak and diminished in numbers, is necessary to their protection as well as to the safety of those among whom they dwell. It must exist in that government, because it never has existed anywhere else, because the theatre of exercise is within the geographical limits of the United States, because it has never been denied, and because it alone can enforce its laws on all the tribes."

We, therefore, answer the question certified, in the affirmative, that the offence committed was within the limits of the reservation within the meaning of the act of Congress approved March 3, 1885, so as to give the Federal courts jurisdiction of the same, and our answer to that purport will be returned to the court below; and that

*The motion to set aside the verdict and for a new trial should be denied.*