**Application of KONAHA.**

**KONAHA v. BROWN, Sheriff.**

**No. 8018.**

Circuit Court of Appeals, Seventh Circuit.

Dec. 8, 1942.

John E. Martin and Wm. A. Platz, Atty. Gen. of Wisconsin, both of Madison, Wis., for appellant.

Jack J. Schumacher, of Shawano, Wis., B. J. Husting and E. J. Koelzer, both of Milwaukee, Wis., and Vernon L. Wilkinson, Atty., Dept. of Justice, of Washington, D. C., for appellee.

Before EVANS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

This appeal involves the right of the State of Wisconsin to enforce its criminal laws against a tribal Indian residing on the Menominee Indian Reservation. The alleged offense was committed on a Wisconsin state highway, which the State of Wisconsin had constructed through the Indian Reservation, under express authorization from the Indian Commissioner. The question is raised through appellee's habeas corpus application to obtain release from the custody of the Sheriff of Shawano County, Wisconsin. The District Court sustained the contention of the petitioner, who was represented by the United States Government and by the authorized attorney of the Indian tribe, and held that the State of Wisconsin had no jurisdiction over this Indian.

*The facts.* Ed Konaha is an enrolled member of the Menominee Tribe of Indians and resides on the Menominee Indian Reservation, located in the Eastern District of Wisconsin. This Reservation is an unallotted reservation in tribal ownership. Konaha was, when these proceedings were instituted, in the custody of the Sheriff of Shawano County, Wisconsin, by reason of his being bound over to the Circuit Court of Shawano County, for trial on the charge of negligent homicide, contrary to sec. 340.271 of the Wisconsin Statutes, which reads: "Any person who by operation of any vehicle while under the influence of alcoholic beverages * * * shall cause the death of another shall be deemed guilty of negligent homicide."

The criminal charge, and the arrest which followed, are based on an occurrence which took place on State Highway 47, located entirely within the boundary of the Menominee Indian Reservation, whereby Konaha killed another enrolled member of the Menominee Tribe while driving his automobile when he was under "the influence of alcoholic beverages."

The sheriff of Shawano County, Wisconsin, made return to the habeas corpus application. His reliance was upon the fact

that the crime was committed on a highway in the reservation, which was constructed and maintained by the State of Wisconsin. The decision of State v. Tucker, 237 Wis. 310, 296 N.W. 645, and the above-stated fact, constitute his justification for his arrest and custody of appellee.

The documents relating to the State's construction and maintenance of Highway 47 through the Menominee Indian Reservation become important. They include a report bearing date of June 10, 1920, by the Superintendent of the Reservation to the Commissioner of Indian Affairs; also, the Superintendent's notification to the Wisconsin Highway Commission of the Government's approval of the State's application for permission to construct the highway; and also, the Wisconsin Highway Commission's acceptance of the grant of right to build the highway.

Below we quote pertinent provisions from the three documents.[1]

█ It seems to be well settled that in the absence of legislation by Congress conferring jurisdiction upon the Wisconsin state courts, they have no jurisdiction of crimes committed by tribal Indians, on Indian reservations. State v. Rufus, 205 Wis. 317, 237 N.W. 67; U. S. v. Kagama, 118 U.S. 375, 6 S.Ct. 1109, 30 L.Ed. 228.

As no grant of jurisdiction was ever made by the Congress, it follows that our inquiry is narrowed to a consideration of the effect of the grant of authority to Wisconsin to build and maintain a highway through the reservation. More specifically, it is this: By granting to the State of Wisconsin permission to extend its highway through the Menominee Indian Reserva-

tion, did the Federal Government relinquish any of its jurisdiction, or grant to the State of Wisconsin any jurisdiction, over crimes committed by any Indian member on the reservation?

The Wisconsin Supreme Court in the case of State v. Tucker, 237 Wis. 310, 296 N.W. 645, held that it did. Judge Duffy of the district court thought otherwise. Our deference to the opinion of that court is such that we differ only because clearly persuaded to another conclusion. We believe the case before us is materially different from the one before the Wisconsin Supreme Court. Our case deals with a crime, the punishment of a felony. The Wisconsin case dealt with a failure to register an automobile. Our case deals with the crime of manslaughter, covered by Federal statute. The Wisconsin case deals with the application of an automobile registration statute to an Indian member of the same reservation. It seems the Indian, a rugged individualist, stood his ground and refused to recognize Wisconsin's right to make him register his automobile or pay a license fee thereon, when he used it only on this Highway 47, within the Menominee Indian Reservation. While this case can be distinguished from the one before us, there is language in the decision, perhaps dicta, upon which appellant relies, as applicable to this case.

Consistency has marked the action of the Federal Government in defining the legal status of the Indian. The relation which has existed between the Government and the Indian has been most frequently described as guardian and ward. The Indian has been described by courts and legislatures as "wards of the nation." [2]

---

1 "I am also forwarding * * * my report * * *. The road in question is * * * located upon the Menominee Reservation. It has been laid out and in use approximately in its present location for a great many years. On account of the great amount of tourist travel during the summer months, it requires considerable work to keep the road in fair condition. At times in the past a considerable amount has been expended from the tribal funds to improve this road. * * * I respectfully recommend approval."

On the 4th of October, 1920, the superintendent advised the Wisconsin Highway Commission,

"Under date of October 1st I am notified by the Commissioner of Indian Affairs of the approval on September 27,

1920 of your application for permission to open the public highway across the Reservation * * *. The highway is granted, as you understand, with the proviso that it is to be and remain a State Highway."

The Wisconsin Highway Commission replied:

"We are in receipt of your letter of October 4, notifying us that the highway through the Reservation that has been in dispute for so long has finally been approved by the Department of the Interior. * * * We assure you we will see that this route is put in first-class shape at the very earliest possible moment next spring."

2 Oregon v. Hitchcock, 202 U.S. 60, 26 S.Ct. 568, 50 L.Ed. 935; Ex parte Webb,

The incorrectness of this description is emphasized by Cohen [3] who seems to think that calling a reservation Indian, a "ward" is confusing.

■ For our purpose, however, it is immaterial whether he be referred to as "a ward of the nation" or as one especially protected because of treaty and Congressional action. In any case, the United States has consistently exercised exclusive jurisdiction over Indians who live on the reservations and are members of the tribe with which the United States has a treaty agreement.

Whether wisely or not, and irrespective of the motives which prompted the Government to so act, it has contributed money for the support and education of the tribal Indian on the various Indian reservations established by the Federal Government. In its dealings with them, it has, to a large extent, attempted to respect the Indian tribal laws. Treaties have been negotiated which provide for Indian reservations. Always has the punishment for violation of the penal statutes, by members of the Indian tribe, been an exclusive function of the Federal Government. By section 548, Title 18, U.S.C.A., the Government defined the crimes for which Indians "within any Indian reservation under the jurisdiction of the United States," may be punished. Included is the crime of homicide.

Changes in methods of living altered the life of the tribe, as well as the white men, who are his immediate neighbors. One of the first and most important activities which these changes affected, was transportation. Indian reservations within a state could effectively block highway construction in certain areas unless it were possible for the state to run highways through the reservations. This practical problem was met, as in this case, by the United States Government's granting to the various applying states, the right to construct and maintain their highways through the Indian reservations. However, nothing was said about the effect of such grant upon the criminal acts of Indians, committed upon said highways in said reservations.

A study of the grant of Wisconsin's right to maintain the highway shows that it, too, failed to contain any reference to jurisdiction of criminal offenses committed by any Indian member, on the highway which the state was to construct in this reservation.

■■ Keeping in mind the attitude of the Government towards the Indian, the legal status of the Indian, as well as the Government's consistent insistence upon exclusive jurisdiction of Indian punishment for violation of criminal statutes, we find it impossible to conclude that the above-mentioned grant carried, by implication, a grant of jurisdiction to the State over crimes committed by the Indian. Certainly, by no express words, was such jurisdiction surrendered to the State. It is true that the grant of a right to maintain a highway must carry with it certain implications respecting the protection of said highway against depredations. If, however, there were any implications arising therefrom which would subject the Indian members to the Wisconsin penal statutes, they would be limited to such penal provisions as served to protect and preserve the highway, such as speeding, impairing the highway, etc.

Whether there was an implied grant of jurisdiction to Wisconsin so as to permit adequate protection of its highway by state statutes, we need not determine. No such case is before us. The case before us is that of manslaughter—killing by the negligence of a drunken driver. The fact that it occurred on the highway does not make its punishment essential or vital to the building or maintenance of the highway. Moreover, it conflicts with the action of Congress which has dealt with the crime of manslaughter by Indians on reservations.

Our final conclusion, therefore, is that for the offense with which the appellee is charged, the Federal Court has exclusive jurisdiction.

Judgment affirmed.

---

225 U.S. 663, 32 S.Ct. 769, 56 L.Ed. 1248; LaMotte v. U. S., 254 U.S. 570, 41 S.Ct. 204, 65 L.Ed. 410; Jaybird Mining Co. v. Weir, 271 U.S. 609, 46 S.Ct. 592, 70 L.Ed. 1112; U. S. v. Candelaria, 271 U.S. 432, 46 S.Ct. 561, 70 L.Ed. 1023; British-American Oil Producing Co. v. Board of Equalization of State of Montana, 299 U.S. 159, 57 S. Ct. 132, 81 L.Ed. 95; Surplus Trading Co. v. Cook, 281 U.S. 647, 50 S.Ct. 455, 74 L.Ed. 1091; U. S. v. Thomas, 151 U. S. 577, 14 S.Ct. 426, 38 L.Ed. 276.

3 Handbook of Federal Indian Law, recently published by the Department of the Interior.