## IN THE OREGON TAX COURT

### ROMAN CATHOLIC BISHOP OF THE DIOCESE OF BAKER

*v.*

### DEPARTMENT OF REVENUE

(TC 1448)

David C. Silven, Silven & Schmeits, Baker, represented plaintiff.

Ted E. Barbera, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered December 17, 1981.

**CARLISLE B. ROBERTS, Judge.**

The plaintiff is a corporation sole, a nonprofit corporation under the provisions of ORS 61.055. It appeals from the defendant's Order No. VL 80-375, dated September 12, 1980.

The question presented is whether certain land within the boundaries of the Umatilla Indian Reservation is entitled to exemption from taxation.

The property is identified in the records of the County Assessor of Umatilla County as Account No. 2N33 7700 (116.58 acres), No. 2N33 8000 (37 acres) and 2N34 101 (98.1 acres). It is known as St. Andrew's Mission and formerly was the site of a school as well as a mission. Both the mission and the school were established by Catholic mission authorities for the benefit of the Indians of the Umatilla Indian Reservation.

The property was omitted from assessment and taxation for an unknown number of years. The county assessor, utilizing the provisions of ORS 311.207 et seq., placed the property on the assessment rolls pursuant to the "omitted property" statute for the tax years 1975-1976, 1976-1977, 1977-1978 and 1978-1979. Of the total acreage, the assessor exempted 19 acres (the site of the mission buildings) as property of a religious organization, pursuant to ORS 307.140. The rest of the property, during the years in question, was leased to a third party as farmland, used and occupied for the purpose of a dry land farming operation, the raising of grain or peas, and pastureland used for livestock grazing. Under the lease, the lessor agreed to pay all real property taxes assessed by Umatilla County and the lessor and lessee each agreed to pay taxes on personal property which was owned by either party and situated on the real property. (Exhibit 19 is a copy of the current farm lease, running from January 1, 1979, to January 1, 1989.)

The Umatilla Indian Reservation was originally established by a Treaty dated June 9, 1855 (12 Stat 945). By an Act of March 3, 1909 (35 Stat 814), the Congress provided:

"That the Secretary of the Interior is hereby authorized and directed to issue a patent in fee simple to the duly authorized missionary board, or other proper authority, of any religious organization engaged in mission or school work on any Indian reservation, for such lands thereon as have been heretofore set apart to and are now being used and occupied by such organization for mission or school purposes."

The Catholic Mission had been authorized to use the subject property in past years and a patent, transferring the

property in fee simple to the plaintiff's predecessor in interest, the Bureau of Catholic Indian Missions, was granted which specifically states that it was issued under the provisions of the Act of March 3, 1909. The deeds (Pl Ex 1 and 2) dated July 1, 1910, and July 11, 1910, granted the whole bundle of ownership rights without reference to any conditions or trust. On May 28, 1913, the Bureau of Catholic Indian Missions deeded the property to an exempt corporation established by the Society of Jesus, the "Pioneer Educational Society" (Pl Ex 3). In this deed, dated May 28, 1913, which transferred 160 acres, following the language of a transfer in fee simple there was added:

"* * * In trust and confidence, nevertheless, for the following purposes and no other, that is to say:

"For the benefit of the party of the first part [the Bureau of Catholic Indian Missions], in execution of its corporate purposes, by employment in imparting instruction and supplying opportunities for Divine worship according to the doctrine and practice of the Catholic Church in unity with the See of Rome to the community of Indians now residing in the vicinity of the said lands and their descendants so long as the said Indians to the number of at least one-tenth of their present number [1,600] shall continue to reside within such distance of the improvements now on the said lands as to be able to conveniently enjoy the same for one or both of the purposes aforesaid; * * *."

On August 30, 1961, the Pioneer Educational Society, in two deeds, granted to the plaintiff herein the above-described property, together with other nearby or adjoining property (Pl Ex 4), in fee simple, the warranty deeds containing no reference to any trust whatsoever.

On April 23, 1981, in preparation for this case, The Most Reverend Thomas J. Connolly, Bishop of the Diocese of Baker, a corporation sole, executed a declaration of trust to the effect that the subject property, acquired from the Pioneer Education Society, had been considered by his predecessor, The Most Reverend Thomas P. Leipzig, D.D., "as being held in trust for the benefit of the Umatilla Indians, and since my ordination as Bishop of Baker, I have recognized such trust." (Pl Ex 14.)

The plaintiff's argument in support of tax exemption of the property is expressed in its complaint and its brief.

Pertinent parts of the complaint read as follows:

"III

"That the plaintiff holds legal title to said lands as trustee for the benefit of the Umatilla Indian Tribe and its members, and all funds received from the operation and rental of the portions of said premises which are devoted to agriculture, are held and used for the benefit of said Indians."

In paragraph VII of the complaint, the plaintiff states:

(1) By the Treaty of 1855 (12 Stat 945), certain tribes of Indians ceded the lands comprising the present Umatilla Indian Reservation (including the subject property) to the United States of America;

(2) The Treaty exempted such lands from levy by a state until such time as the state, with the consent of Congress, removed the levy restriction;

(3) The State of Oregon has not removed the restriction nor has Congress consented to the state's removal thereof;

(4) Legal title to the lands passed from the United States to the Bureau of Catholic Indian Missions, a corporation, in 1913 [1910]; the Bureau of Catholic Indian Missions conveyed the property to the Pioneer Educational Society (a nonprofit corporation) with a specification that the property was to be held in trust[1] for the benefit of the Umatilla Indians until a specific point of dispersion of such Indians was reached; the Pioneer Educational Society conveyed the subject property to the plaintiff and "although the conveyance to the plaintiff did not expressly mention such trust, the plaintiff recognizes the trust and has used the income in accordance with the trust provisions, and the beneficial ownership is, in effect, in the Indians."

Plaintiff's argument is further spelled out in Plaintiff's Brief, page two:

---

[1] This is the only testimony in the suit, other than tradition, of any trust. Defendant's Exhibit E, copies of letters collected by Fr. Joseph Brown and placed in the hands of the county assessor, offered in evidence by defendant, contains a letter from an agent of the Pioneer Educational Society referring to a trust. Plaintiff objected to admission of Defendant's Exhibit E as incomplete, hearsay, irrelevant. The court reserved decision but, after examination of the collection, following trial, sustained plaintiff's objection.

"(4) Although subsequent conveyances did not mention the trust, that trust is a binding obligation upon the plaintiff, and in effect, the Indians are the beneficial owners of the property, all of which is within the boundaries of the reservation.

"(5) Indian lands are non-taxable.

"(6) Oregon looks primarily to beneficial ownership rather than bare legal title in determining taxability of property."

The defendant rebuts the plaintiff's arguments, first citing the pertinent Oregon statute, ORS 307.140:

"Upon compliance with ORS 307.162 [providing for filing a claim for exemption], the following property owned or being purchased by religious organizations shall be exempt from taxation:

"(1) All houses of public worship and other additional buildings and property used solely for administration, education, literary, benevolent, charitable, entertainment and recreational purposes by religious organizations, the lots on which they are situated, and the pews, slips and furniture therein. However, any part of any house of public worship or other additional buildings or property which is kept or used as a store or shop or for any purpose other than those stated in this section shall be assessed and taxed the same as other taxable property.

"(2) Parking lots * * *."

■ Tax exemptions are not inherent; they must be based on statute and such statutes are strictly (but "reasonably") construed. *Emanuel Lutheran Char. v. Dept. of Rev.,* 4 OTR 410 (1971), *aff'd* 263 Or 287, 502 P2d 251 (1972); *Security Sav. & Trust Co. v. Lane County,* 152 Or 108, 53 P2d 33 (1935). Under ORS 307.140, Oregon income-producing activities of religious corporations have always been subjected to ad valorem taxation. *Corp. Presiding Bishop v. Dept. of Rev.,* 6 OTR 268 (1975), *aff'd* 276 Or 775, 556 P2d 685 (1976); *First EUB Church v. Commission,* 1 OTR 249 (1963).

Upon obtaining a patent to tribal land, conveying a fee simple therein, even an Indian patentee has the status of a property taxpayer. *Dillon v. Antler Land Co.,* 507 F2d 940 (9th Cir 1974), *cert denied* 421 US 992, 95 S Ct 1998, 44 L Ed2d 482 (1974); *United States v. Seufert Bros. Co.,* 252 F 51 (9th Cir

1918); *Leading Fighter v. County of Gregory,* 230 NW 2d 114 (SD 1975), *cert denied* 423 US 1032, 96 S Ct 563, 46 L Ed2d 405 (1975).

Defendant also points out that the federal Act of March 3, 1909 (35 Stat 814), under which the plaintiff's predecessor in interest was given a fee simple ownership of the subject property, supersedes the Treaty of 1855. *Stephens v. Cherokee Nation,* 174 US 445, 19 S Ct 722, 43 L Ed 1041 (1899); *Horner v. United States,* 143 US 570, 12 S Ct 522, 36 L Ed 266 (1892).

The federal government, by a specific act of the U.S. Congress, possesses the power to convey the fee to lands occupied by Indian tribes, and has often done so (normally with the consent of the Indians on the reservation). This rule was noted in *Byers v. We-Wa-Ne,* 86 Or 617, 631, 169 P 121, 125 (1917). *See also Wisconsin v. Hitchcock,* 201 US 202, 26 S Ct 498, 50 L Ed 727 (1906); *United States v. Thomas,* 151 US 577, 14 S Ct 426, 38 L Ed 276 (1894); *Buttz v. Northern Pacific R.R. Co.,* 119 US 55, 7 S Ct 100, 30 L Ed 330 (1886).

■ While the court does not discount the existence of a trust, the trust (if binding) was self-imposed by the church which created the mission and was not imposed by the patent issued by the United States. It is an internal matter among successive agencies of the church. This does not supply a basis for exemption. The corporation sole of a religious organization is a fiduciary with respect to all of its activities and holdings and it cannot supplant the state's requirements for revenue by any unilateral act with respect to such holdings, except as specifically provided by statute. It cannot contract away the tax liability (which runs with the land, in any event). *Lucas v. Earl,* 281 US 111, 50 S Ct 241, 74 L Ed 731, 8 AFTR 10287 (1930).

■ Contrary to plaintiff's view that Oregon looks primarily to the beneficial ownership, rather than bare legal title, to determine taxability of property, defendant asserts that property taxes follow legal title, relying upon *Nehalem Timber Co. v. Columbia Co.,* 97 Or 100, 189 P 212, 191 P 318 (1920). But, as has been stated, property taxes are a lien upon the land and follow the land, even though the land is held by an "unknown owner." ORS 311.405(2), (6); ORS 308.236(2).

The preponderance of testimony and law favors the position of the defendant. The court, accordingly, affirms the Department of Revenue's Order No. VL 80-375. Defendant is entitled to its costs.