**UNITED STATES of America, Plaintiff,**

v.

**Loren Michael GREY BEAR, Jesse Dean Cavanaugh, Paul Henry Cavanaugh, Tayron Dale Dunn, a/k/a Terry Dunn, Maynard James Dunn, Timothy Sylvester Longie, Jr., Roger Darrel Charboneau, Dwayne Allen Charboneau, Leonard George Fox, Richard John LaFuente, a/k/a Ricky LaFuente, John Emmanuel Perez, a/k/a John Perez, Defendants.**

**Cr. No. C2–85–69.**

United States District Court, D. North Dakota, Northeastern Division.

June 17, 1986.

*See Babcock,* 12 N.Y.2d at 481–82, 191 N.E.2d at 283–84, 240 N.Y.S.2d at 749–50; *Auten,* 308 N.Y. at 160, 124 N.E.2d at 101–02.

Dennis Fisher, Lynn Crooks, Norman Anderson, Asst. U.S. Attys., Fargo, N.D., for plaintiff.

David C. Thompson, Fargo, N.D., for Loren Grey Bear.

Thomas L. Zimney, Grand Forks, N.D., for Jesse Dean Cavanaugh.

Gerald J. Haga, Grand Forks, N.D., for Paul Henry Cavanaugh.

M. Daniel Vogel, Fargo, N.D., for Tayron Dale Dunn, a/k/a Terry Dunn.

Kevin B. Spaeth, Grand Forks, N.D., for Maynard Dunn.

Allen J. Flaten, Grand Forks, N.D., for Timothy Sylvester Longie, Jr.

Alan J. Larivee, Grand Forks, N.D., for Roger Darrel Charboneau.

Michael F. Daley, Grand Forks, N.D., for Dwayne Allen Charboneau.

Mark R. Fraase, Fargo, N.D., for Leonard George Fox.

Bruce E. Bohlman, Grand Forks, N.D., for Richard John LaFuente, a/k/a Ricky LaFuente.

Warren C. Sogard, Fargo, N.D., for John Emmanuel Perez, a/k/a John Perez.

## MEMORANDUM AND ORDER

BENSON, Senior District Judge.

At the close of all the evidence in this case, Defendants Loren Michael Grey Bear, Jesse Dean Cavanaugh, Paul Henry Cavanaugh, Tayron Dale Dunn, Maynard James Dunn, Timothy Sylvester Longie, Jr., Roger Darrel Charboneau, Dwayne Allen Charboneau, Leonard George Fox, Richard John LaFuente, and John Emmanuel Perez moved the court to dismiss Counts I and II of the indictment against them on the grounds of lack of jurisdiction. Count I of the indictment charged these eleven defendants with the murder of Jerome Edward Peltier, an Indian. Count II of the indictment charged the defendants with assault with dangerous weapons resulting in serious bodily injury to Jerome Edward Peltier. Both Counts one and two allege the stated offenses occurred:

> near Fort Totten, in the District of North Dakota, within the exterior boundaries of the Devils Lake Sioux Indian Reservation, in Indian country, and within the exclusive jurisdiction of the United States....

The court reserved ruling on the motion, but proceeded on the assumption that jurisdiction was present. Subsequently the jury returned verdicts finding ten of the defendants guilty of murder and one defendant guilty of assault.

## BACKGROUND

The United States asserts jurisdiction over the offenses of murder and assault on the basis of sections 1152 and 1153, title 18, United States Code. An essential element of jurisdiction under these sections is that the crime occur in Indian country. The term "Indian country" is defined in pertinent part in section 1151(a) as "all land within the limits of any Indian reservation under the jurisdiction of the United States Government, not withstanding the issuance of any patent." 18 U.S.C. § 1151(a). The facts proved at trial establish the crimes of murder and assault occurred within the exterior boundaries of the Devils Lake Indian Reservation (generally referred to as the Devils Lake Sioux Indian Reservation) as set forth in the 1867 treaty establishing the reservation.

The defendants base their lack of jurisdiction argument on two grounds. The first ground relates to the reservation status of the unallotted lands of the Devils Lake Sioux Indian Reservation; the second ground relates to the ownership of the bed of Devils Lake.

## ANALYSIS

### I. RESERVATION STATUS OF UNALLOTTED LANDS.

Defendants contend the crimes of murder and assault occurred on unallotted land and that the Act of April 27, 1904, Pub.L. No. 179, 33 Stat. 319 (1904 Act) disestablished the boundaries of the reservation, thereby excluding the unallotted lands from the reservation. The 1904 Act opened the surplus unallotted lands of the Devils Lake Sioux Indian Reservation to settlement by non-Indians.

■ There is a presumption against disestablishment of a reservation's boundaries. *Solem v. Bartlett,* 465 U.S. 463, 481, 104 S.Ct. 1161, 1171, 79 L.Ed.2d 443 (1984). In order to find that the boundaries of a reservation have been disestablished, Congress must have clearly evinced an intent to disestablish. *Id.* at 470, 104 S.Ct. at 1166. The intent of Congress with regard to the issue of disestablishment may be determined from the language of the surplus lands act, events surrounding the passage of the act, and the subsequent

treatment of the lands opened to settlement. *Id.* at 470–72, 104 S.Ct. at 1166–67.

### A. Language of the 1904 Act.

■ The statutory language used to open an Indian Reservation to settlement by non-Indians is the most probative evidence of Congressional intent. *Id.* at 470, 104 S.Ct. at 1166. In *Solem,* the Supreme Court stated:

> Explicit reference to cession or other language evidencing the present and total surrender of all tribal interests strongly suggests that Congress meant to divest from the reservation all unallotted opened lands.... When such language of cession is buttressed by an unconditional commitment from Congress to compensate the Indian tribe for its opened land, there is an almost insurmountable presumption that Congress meant for the tribe's reservation to be diminished.

*Id.* at 470–71, 104 S.Ct. at 1166 (citations omitted).

The statutory language used in the 1904 Act to open the Devils Lake Indian Reservation to settlement by non-Indians provides as follows:

> "ARTICLE I. The said Indians belonging on the Devils Lake Indian Reservation, North Dakota, for the consideration hereinafter named, do hereby cede, surrender, grant, and convey to the United States all their claim, right, title, and interest in and to all that part of the Devils Lake Indian Reservation now remaining unallotted ... except six thousand one hundred and sixty acres required for allotments to sixty-one Indians of said reservation entitled to allotments, but to whom allotments have not yet been made....
>
> "ART. II. In consideration of the land ceded, relinquished, and conveyed by article one of this agreement ... the United States stipulates and agrees to dispose of the said lands to settlers under the provisions of the homestead and townsite laws ... and to pay to said Indians the proceeds derived from the sale of said lands....

Act of April 27, 1904, Pub.L. No. 179, arts. I–II, 33 Stat. 319, 321.

The "cede, surrender, grant and convey" language of the 1904 Act strongly suggests that Congress intended to disestablish the boundaries of the Devils Lake Indian Reservation. *See Solem,* 465 U.S. at 470, 104 S.Ct. at 1166. The 1904 Act does not, however, contain an unconditional commitment on behalf of Congress to compensate the tribe for its opened land. Under the language of the Act, the United States was to sell what lands it could and turn the proceeds over to the Indians. Therefore, the "almost insurmountable presumption" that Congress intended to disestablish the boundaries of the reservation, *see id.* at 470–71, 104 S.Ct. at 1166, may not be present in this case.

■ Language in a surplus lands act other than the "operative language" and language relating to the method of payment may be considered in determining the intent of Congress on the issue of disestablishment. *Id.* at 474, 104 S.Ct. at 1168. The court has reviewed the other language of the 1904 Act and finds it not helpful with regard to the issue of disestablishment.

### B. Surrounding Circumstances

■ Circumstances surrounding the passage of a surplus lands act may be considered in determining the intent of Congress on the issue of disestablishment. *Id.* at 471, 104 S.Ct. at 1166. These circumstances include the legislative history of the act, *id.,* the tenor of any agreements with the Indians, *id.,* and the language of Presidential proclamations implementing the provisions of the surplus lands act. *See Rosebud Sioux Tribe v. Kneip,* 430 U.S. 584, 602–03, 97 S.Ct. 1361, 1371, 51 L.Ed.2d 660 (1977).

#### 1. Legislative History

The committee reports recommending passage of the bill which ultimately became the 1904 Act do not contain a discussion directly related to the issue of disestablishment of the boundaries of the Devils Lake

Indian Reservation. *See* H.R.Rep. No. 637, 58th Cong., 2nd Sess. (1904); S.Rep. No. 814, 58th Cong., 2nd Sess. (1904). They do, however, contain the following isolated passage: "It will be noted that the cession by the Indians of these surplus lands, as set forth in the agreement and as provided in the bill amending the agreement, is absolute." H.R.Rep. No. 637, 58th Cong., 2nd Sess. 5 (1904); S.Rep. No. 814, 58th Cong., 2nd Sess. 6 (1904). Because the 1904 Act provides that the Indians cede all of their interest in the surplus lands, the reference in the reports to an absolute cession by the Indians is of little significance as it adds no additional insight into the intent of Congress on the issue of disestablishment.

The issue of disestablishment of the boundaries of the Devils Lake Indian Reservation was not discussed during the debates regarding the passage of the bill that ultimately became the 1904 Act. *See* 38 Cong.Rec. 1641–43 (1904) (House debates); 38 Cong.Rec. 4914–25 (1904) (Senate debates). During the House debates, Congressman Marshall stated the provisions of the bill "are similar to those of the Rosebud bill, which passed this house a few days ago." 38 Cong.Rec. 1642 (1904). The Rosebud bill referred to ultimately became the Act of April 23, 1904, Pub.L. No. 148, 33 Stat. 254, which the Supreme Court held disestablished a portion of a reservation in *Rosebud Sioux Tribe v. Kneip*, 430 U.S. 584, 605, 97 S.Ct. 1361, 1372, 51 L.Ed.2d 660 (1977).

The statement of Congressman Marshall that the Devils Lake Bill was similar to the Rosebud Bill has little relevance on the issue of disestablishment of the boundaries of the Devils Lake Indian Reservation. With regard to the issue of disestablishment, each surplus lands act must be considered on its own merits.

### 2. Agreement with Indians

In 1901, an Indian inspector for the United States negotiated an agreement with the Indians of the Devils Lake Sioux Indian Reservation for the opening of their surplus unallotted lands to settlement by non-Indians. The agreement contains language similar to that of the 1904 Act, except that under the agreement, the United States was to pay the Indians a sum certain for the surplus lands. *See* Act of April 27, 1904, Pub.L. No. 179, 33 Stat. 319, 319–20 (agreement with Indians). The existence of a similar agreement was a factor pointing toward disestablishment in *Rosebud*, 430 U.S. at 591–92, 97 S.Ct. at 1365–66, and must be considered as a factor pointing toward disestablishment in the present case.

### 3. Presidential Proclamations

Presidential proclamations implementing a surplus lands act can be considered in determining whether the boundaries of a reservation have been disestablished. *Rosebud*, 430 U.S. at 602–03, 97 S.Ct. at 1371. The 1904 Act provides that the surplus lands "shall be disposed of under the general provisions of the homestead and townsite laws of the United States, and shall be opened to settlement and entry by proclamation of the President." Act of April 27, 1904, Pub.L. No. 179, 33 Stat. 319, 322. On June 2, 1904, President Theodore Roosevelt issued a proclamation opening the land to settlement. Proclamation No. 32, 33 Stat. 2368 (1904). The preamble to the proclamation states that the Indians on the Devils Lake Indian Reservation ceded all their interest in the surplus unalloted lands on the reservation. *Id.* The 1904 Act also provides that when no more of the lands could be sold at the price stated in the Act, the President could by proclamation dispose of the lands at another price or in another manner. Act of April 27, 1904, Pub.L. No. 179, 33 Stat. 319, 323. In 1916, President Wilson issued a proclamation changing the price and manner of sale, and in 1924 President Coolidge issued a similar proclamation. The preambles of both proclamations refer to the "disposal of lands within the former Devils Lake Indian Reservation." 39 Stat. 1776 (1916); 43 Stat. 1966 (1924).

The cession language in the 1904 proclamation and the language referring to the "former Devils Lake Indian Reservation" in the 1916 and 1924 proclamations are

factors pointing toward disestablishment, but they are factors with little weight. It is the intent of Congress that is important in determining whether a reservation has been disestablished, *see Solem,* 465 U.S. at 470, 604 S.Ct. at 1166, not the President's choice of words in a proclamation. Moreover, the cession language in the preamble to the 1904 proclamation is similar to the cession language in the 1904 Act and therefore provides no additional insight with regard to the intent of Congress. Finally, the language in the 1916 and 1924 proclamations referring to the Devils Lake Indian Reservation as a "former" reservation has little weight because proclamations issued 12 and 20 years respectively after passage of the 1904 Act provide little insight with respect to the intent of Congress in 1904.

### C. Subsequent Jurisdictional and Demographic History

The record in the present case does not contain evidence of the demographic history of the unallotted lands on the reservation opened to non-Indian settlement. With regard to jurisdictional history, the court takes judicial notice that the federal courts, the tribal courts, and the Bureau of Indian Affairs have historically exercised jurisdiction and at present continue to exercise jurisdiction over Indians within the exterior boundaries of the reservation as those boundaries were established by the 1867 treaty. This exercise of jurisdiction by the federal courts, the tribal courts, and the Bureau of Indian Affairs is a factor weighing strongly against disestablishment of the boundaries of the Devils Lake Indian Reservation. *Rosebud,* 430 U.S. at 605 & n. 28, 97 S.Ct. at 1372 & n. 28.

The court further takes judicial notice that on February 4, 1981, the associate solicitor of the Department of the Interior issued an opinion relating to violations of refuge regulations on Sullys Hill National Wildlife Refuge, an area within the exterior boundaries of the reservation.

Following the 1901 agreement between the Indians of the Devils Lake Reservation and the United States, Congress in the 1904 Act opening the reservation to settlement by non-Indians authorized the President to reserve for use as a public park a tract which was formerly a portion of an abandoned military reservation. The President issued a proclamation creating Sullys Hill Park which eventually became a game preserve administered by the Interior Department.

The solicitor concluded it was the intent of Congress and the Indians to terminate the area's reservation status. The weight to be afforded the solicitor's opinion is diminished by the fact that the Sullys Hill area has from its inception been generally recognized as being within the reservation. Further, the Indians were continuing to assert hunting rights over the area as late as 1981.

Finally, the court takes judicial notice that in 1983 Congress enacted the Devils Lake Sioux Indian Land Consolidation Act, Pub.L. No. 97–459, tit. I, § 101, 1982 U.S. Code Cong. & Ad. News (96 Stat.) 2515, wherein the Congress found, inter alia, that "the continued existence of the Devils Lake Sioux Reservation, North Dakota, as a permanent homeland of the Devils Lake Sioux Tribe and as a necessary foundation for continued self-determination requires that the Secretary of the Interior have authority to

(A) consolidate and increase the trust land base in the reservation for the tribe and individual tribal members; and

(B) prevent further loss of land."

■ After balancing all the factors which would indicate an intent by Congress in 1904 to disestablish the reservation and all the factors which would indicate a non-intent to disestablish, the court concludes that whatever the actual intent of Congress may have been in 1904, it is clear there was no de facto disestablishment and equally clear that Congress in 1983 indicated a present intent that the reservation continue to exist as its boundaries were established by the 1867 Treaty. The presumption against disestablishment, *Solem,* 465 U.S. at 481, 104 S.Ct. at 1171, prevails and clear intent to disestablish the bound-

aries of the reservation has not been shown.

## II. BED OF DEVILS LAKE

 The treaty establishing the Devils Lake Indian Reservation sets forth the boundaries of the reservation as follows:

> Beginning at the most easterly point of the Devils Lake; thence along the waters of said lake to the most westerly point of the same; thence on a direct line to the nearest point on the Cheyenne River; thence down said river to a point opposite the lower end of Aspen Island, and there on a direct line to the place of beginning.

Treaty of February 19, 1867, art. IV. 15 Stat. 505.

The crimes of murder and assault occurred just south of Devils Lake and within the exterior boundaries of the reservation. The defendants contend the crimes occurred on the bed of Devils Lake and that the state has title to the bed under the equal footing doctrine. Therefore, the defendants argue the federal court does not have jurisdiction over this case. This argument is without merit. Under the definition of "Indian country" set forth in section 1151(a) of title 18, jurisdiction extends to all lands within the exterior boundaries of an Indian reservation regardless of who owns the land. *See Seymour v. Superintendent,* 368 U.S. 351, 357–58, 82 S.Ct. 424, 427–28, 7 L.Ed.2d 346 (1962); *Hilderbrand v. Taylor,* 327 F.2d 205, 206–07 (10th Cir. 1964). *See also, United States v. Thomas,* 151 U.S. 577, 585–86, 14 S.Ct. 426, 429, 38 L.Ed. 276 (1894) (jurisdiction over state owned school lands under act of March 3, 1885, ch. 341, § 9, 23 Stat. 362, 385).

IT IS ORDERED the defendants' motion to dismiss for lack of jurisdiction is denied.